Opinion issued February 10, 2011

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00410-CR &

NO. 01-09-00411-CR

———————————

Ashley Malone Spikes, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 248th District Court

Harris County, Texas



Trial Court Case Nos. 1197741 and 1197742

 



 

MEMORANDUM OPINION

            A jury convicted appellant, Ashley
Malone Spikes, of the first degree felony offense of aggravated sexual assault
of a child and the second degree felony offense of indecency with a child.[1]  The jury assessed punishment at life
imprisonment and twenty years’ confinement, respectively, to run concurrently.  On appeal, appellant contends that (1) the
State presented perjured testimony in violation of ethical rules; (2)
application of article 38.072 of the Code of Criminal Procedure violated
appellant’s confrontation clause rights; (3) the trial court erroneously
allowed the State to shift the burden of proof during closing argument; (4) the
State violated Brady v. Maryland by
failing to disclose the complainant’s alleged full recantation of her outcry
testimony; (5) the trial court erred in excluding the recording of the
complainant’s Children’s Assessment Center (CAC) interview, during which she
partially recanted her outcry; (6) the State failed to present legally
sufficient evidence that appellant committed the offenses; (7) the trial court
erroneously admitted evidence concerning extraneous bad acts involving
appellant and the complainant; and (8) appellant’s trial counsel rendered
ineffective assistance by failing to seek a limiting instruction regarding the
use of the extraneous bad acts evidence in the written charge.

          We affirm.

 

Background

          On
March 2, 2008, Pamela and Patrick Arnett visited appellant’s house for a
barbecue dinner.  Appellant and Patrick
are cousins, and, according to both Arnetts, the two families were close and
often spent time together.  When the
Arnetts arrived, they found appellant in the backyard barbecuing and his wife,
Harriet, in the kitchen.  Pamela
testified that Harriet was smoking a cigarette and drinking wine and that she
had a cut under her eye.  Appellant and
Patrick left to buy some beer for the barbecue, and Pamela talked with Harriet,
who was shaking and crying.  After appellant
and Patrick returned and finished cooking, appellant and Harriet began arguing.

          During
the argument, appellant and Harriet’s four children came into the kitchen to
get ready for dinner.  After appellant
would not let his youngest daughter fix a plate of food, his argument with
Harriet escalated and he hit her three times under the eye.  Harriet then pulled a knife out of her
jacket, and she and appellant struggled over the knife, cutting Harriet’s hand
in the process.  Patrick separated
appellant and Harriet, and he and Pamela took Harriet and the children back to
their house for the night.

          At
the Arnetts’ house, while Patrick went out to buy dinner, Harriet told Pamela
that appellant had sexually abused the complainant, their eleven-year-old daughter,
J.S.  Later that evening, appellant
arrived at the house, and he and Harriet talked in his car for the entire
night.  The next day, Harriet took the
children back to her house.  Pamela and
Patrick drove over after work to check on Harriet and the children and to
discuss what Harriet had told Pamela the previous evening.

          Pamela
and Patrick spoke with J.S. in the playroom, a converted garage.  Pamela testified that the normally cheerful
J.S. spoke with her head down and that she was crying.  J.S. told the Arnetts that “[her] daddy had
been touching [her].”  According to
Pamela, J.S. stated that the abuse began when J.S. would give appellant
“pedicures,” during which J.S. would trim appellant’s toenails and appellant
would place his feet on her lap and wiggle his toes on her “private part.”  J.S. related that appellant then began touching
her breasts under her bra and “tongue kiss[ing]” her.  J.S. also stated that appellant twice tried
to place the tip of his penis in her vagina, and he successfully penetrated her
with his fingers.  On one occasion,
appellant placed “his private part in [J.S.’s] mouth” and she spit “something
white” onto the floor of the playroom, which appellant then cleaned with
bleach.  J.S. told Pamela that “most of
the time,” these incidents occurred after J.S. came home from school and before
Harriet came home from work.  J.S. asked
Pamela “why did God let this happen to her,” and she told Pamela and Patrick
that she wanted to make sure that appellant did not do the same thing to her
younger sister.

          Pamela
and Patrick told Harriet that she needed to contact the police, which Harriet
seemed reluctant to do.  The next day,
Pamela called Harriet and discovered that she still had not contacted the
police.  While Pamela drove over to their
house, J.S. called her and told her that “she did not want [Pamela] to call the
cops because her mama and her daddy would get in trouble and who was going to pay
their bills[?]”  Pamela and J.S.
ultimately convinced Harriet to let them call the police.  Pamela testified that she had had daily
contact with Harriet, but, beginning the day after J.S. called the police,
Harriet did not return Pamela’s calls.  Pamela
and Patrick only saw Harriet and the children once after J.S. reported the
alleged abuse, and they had previously seen the family on a regular basis.

          Harris
County Sheriff’s Department Deputy C. Anderson responded to J.S.’s call.  Deputy Anderson briefly spoke with Harriet,
who informed him that J.S. told her that appellant had been sexually assaulting
her.  Harriet also stated that she
believed J.S.  J.S. appeared “really
open,” confident, and calm when she spoke to Deputy Anderson, and she did not
cry.  J.S. did not provide specific dates
for each incident, but instead gave estimates, such as a particular month or
year.  J.S. took Deputy Anderson around
the house to show him where the incidents occurred, and he testified that he
could faintly smell bleach in the playroom.

          Susan
Spjut, a forensic nurse for Memorial-Hermann Hospital, testified that she
examined J.S. on March 5, 2008.  According
to Spjut, J.S. told her the following before the examination:

My father was fondling me
since I was very small, since I was 4 or 5. 
He was, like, playing with me with his hands, my private part, the
front.  He put his fingers in about
midway but not all the way in.  When he
tried to get in, I’d push him off because I was scared.  He kissed me, what they call French-kissing,
in the mouth, his tongue.  He would stick
his hands in my bra and squeeze my breast.  He said, “You know you like it.”  I didn’t like it.  He told me to promise not to tell
anybody.  The last time was December 1st,
fondling.  I made sure I wasn’t alone
with him after that.

 

Spjut stated that she did not observe any trauma in
the genital examination, but she was not surprised by this finding.  She also noted in her records that J.S. was
“calm and cooperative” during the exam, and she agreed with the State that this
demeanor is “normal for a young girl under those circumstances.”

          Harris
County Sheriff’s Department Sergeant J. Fitzgerald works at the Children’s
Assessment Center (CAC) and was assigned to J.S.’s case shortly after J.S.
reported the alleged abuse.  Sergeant
Fitzgerald observed, via closed-circuit television, the forensic interview of
J.S on March 11, 2008.  According to
Sergeant Fitzgerald, J.S. “recant[ed] on the aggravated sexual assault
[allegations]” during the interview, but she “maintain[ed] the indecency”
allegations against appellant.

          Dr.
Michelle Lyn, the medical director for the CAC, testified that she examined
J.S. at the CAC on March 11.  Dr. Lyn
first asked J.S. why she was at the CAC, and J.S. responded that she was there
because “[she] need[s] to get checked to see if [she has] penetration or
disease.”  J.S. further stated that her
father “touched [her] on [her] breasts and butt” and that this began when J.S.
was five or six years old.  When Dr. Lyn
asked J.S. what penetration means to her, J.S. responded “touching
inside.”  Dr. Lyn then asked if there was
anything else that J.S. wanted to tell her. 
J.S. told Dr. Lyn that she “wanted to make it clear to [Lyn] that she
was lying about penetration.  [J.S.] said
she was afraid of a false report before the trial.”  Dr. Lyn testified that this statement was
unusual, and that no child had ever said that to her before.  Dr. Lyn asked J.S. if she understood the
difference between the truth and a lie, and after J.S. responded that she did,
Dr. Lyn then asked whether J.S. told the truth or a lie the night she went to
the hospital.  J.S. responded that she
“told Ms. Susan [Spjut] the truth” and she was telling Dr. Lyn the truth—appellant touched her.  Dr. Lyn testified that J.S. had normal
genitalia, but that this finding did not rule out the occurrence of
penetration.  According to Dr. Lyn, the
best evidence of sexual abuse is the disclosure of the child.

The State indicted appellant for aggravated sexual assault of
a child, alleging that appellant penetrated J.S.’s sexual organ with his
finger, and indecency with a child, alleging that appellant touched J.S.’s
breast.  Appellant moved pre-trial for
the discovery of exculpatory and mitigating evidence, specifically, the video
recording of J.S.’s CAC forensic interview.  Appellant also filed a pre-trial motion in
limine, seeking to exclude “all extraneous crime or misconduct evidence,”
including allegations of sexual contact between appellant and J.S. beyond the
two instances alleged in the indictment. 
The trial court denied this request.

Before opening statements, the trial court held a hearing to
determine the appropriate outcry witness. 
At the hearing, Sergeant Fitzgerald testified that, after he reviewed
J.S.’s forensic interview, he spoke with Harriet because he initially believed
that she was the outcry witness.  When he
spoke with her, however, she indicated that J.S. had not told her the details
of appellant’s conduct.  Pamela then
testified regarding her conversation with J.S., and the trial court ruled that
Pamela was the proper outcry witness.

At this hearing, defense counsel also expressed concern over
J.S.’s availability to testify, because the State indicated during voir dire
that J.S. “might not be available for
cross-examination . . . [because she] may have perjured
herself.”  The State responded that it
was “not going to call [J.S.] for obvious reasons,” but she was available to
testify if the defense wished to call her. 
Neither party called J.S. as a witness.

During voir dire, the State presented the following
hypothetical:

Hypothetically speaking, if a child changes their
situation and says it didn’t happen, and as prosecutor you don’t believe they
are telling you the truth now but they told you the truth in the beginning,
under the rules of ethics, I cannot call them to the stand.  Yet, I do in good faith believe when called
to the stand, they would commit perjury and you can’t call them to the stand in
order to get in the other statement. 
There are other ways you can make that case, hypothetically speaking.

 

The
State briefly mentioned during its opening statement that the jury would not
hear from J.S. or Harriet “because [J.S.] has recanted.”

Before cross-examination of
Sergeant Fitzgerald, defense counsel informed the trial court that he wished to
introduce the recording of J.S.’s CAC interview so he could question Fitzgerald
about it.  The State objected on hearsay
grounds, and the trial court sustained the objection.  After asking Sergeant Fitzgerald several
questions, defense counsel again attempted to introduce the video, and the
trial court stated that “[n]either side can introduce it.  It’s hearsay. 
State tried to introduce it.  Can’t
do it.  It’s hearsay.”  When defense counsel asked Sergeant
Fitzgerald how many times J.S. recanted during the interview, the trial court
again sustained the State’s hearsay objection and ruled that the State did not
open the door to allowing the admission of the interview tape during its direct
examination of Fitzgerald.  Defense
counsel did not articulate, during any of these three exchanges, a specific
hearsay exception or rationale that would allow admission of the
recording.  The trial court did not admit
any portion of the CAC video into evidence.

          Sergeant
Fitzgerald agreed that J.S. talked about an incident that had allegedly occurred
in December 2007 at several different times during her interview.  Once she mentioned that no touching occurred,
then she stated that appellant touched her inside of her panties, and then she
stated that appellant touched her on her breast.  Sergeant Fitzgerald did not investigate the
discrepancies to determine whether these were three separate events.  Deputy Anderson, who also reviewed the
recording, agreed that J.S. stated during the interview that she had lied
regarding the sexual assault allegations against appellant and that she was
angry with her father about a financial argument that he had with Harriet.

          M.D.,
appellant’s eldest son, testified that he and his younger brother would arrive
home from school before J.S. and their other sister, and that appellant would
not come home until around five or six o’clock at night.  Usually, when appellant was home, the four
children would either watch television or play outside, and M.D. could not
think of a time when his sisters would be alone in the house with
appellant.  M.D. testified that he did
not believe appellant could have done anything to J.S or that appellant ever
had an opportunity to be alone with J.S.

          Appellant
testified on his own behalf and denied all of the allegations against him.  He stated that he did not hit Harriet on
March 2, but, instead, she started yelling at him when their daughter wanted to
fix a plate of food and she “came at [him]” with a knife.  Appellant also testified that he had never
been alone with J.S. at any point during her life.  Appellant conceded that he would occasionally
arrive home from work around 2:30 in the afternoon, before the children arrived
home from school.

Appellant further testified that
J.S., Pamela, and Patrick were all lying about the allegations and that he did
not believe that Harriet “put anybody up to lying.”  Appellant stated that, although he was close
with Patrick, they were not like brothers, and Patrick and Pamela were lying
about how close their family was to appellant’s family.  When asked whether he heard Pamela’s testimony regarding her
phone conversation with J.S., appellant stated, “I wasn’t really paying
attention to Pam.  She was just a joke up
here.”  Appellant opined that Pamela was
“fake crying” while testifying and that she was “some kind of actress.”

During closing argument, the prosecutor mentioned, as he had
in his opening statement, that neither J.S. nor Harriet had testified, reminded
the jurors of the hypothetical he had posed during voir dire, and stated that the
State could not call J.S. or Harriet to testify because “[w]e’re morally—we’re ethically barred from putting
someone on the witness stand, swearing them to tell the truth when we don’t
believe that they will tell the truth.”  The
prosecutor further stated that he has “a great duty to see that justice is done
and [he is] forbidden to solicit perjury to get it.”  He mentioned that he had J.S. available at
the courthouse to testify, but he could not put her on the stand.  Defense counsel objected on improper argument
grounds, contending that he did not have a duty to call J.S. as a witness.  The trial court informed the jury that “[t]he
defense has no duty to call.”

The jury convicted appellant of aggravated sexual assault of
a child and indecency with a child, and assessed punishment at life
imprisonment and twenty years’ confinement, respectively.

Presentation of Perjured Testimony

          In
his first issue, appellant contends that the State presented perjured testimony
in violation of ethical rules when it called Pamela to testify regarding J.S.’s
outcry statement.

          The
Fourteenth Amendment prohibits the State from knowingly using perjured
testimony.  Vasquez v. State, 67 S.W.3d 229, 239 (Tex. Crim. App. 2002).  A person commits perjury if, with the intent
to deceive and with knowledge of the statement’s meaning, she makes a false
statement under oath or swears to the truth of a false statement previously
made and the statement is required or authorized by law to be made under oath.  Tex. Penal
Code Ann. § 37.02(a)(1) (Vernon 2003).  Even if the prosecutor does not instigate the
perjury, he is obligated to correct any perjured testimony given by one of his
witnesses.  Vasquez, 67 S.W.3d at 239 (citing United States v. Bagley, 473 U.S. 667, 678, 105 S. Ct. 3375, 3381
(1985) and Ex Parte Castellano, 863
S.W.2d 476, 480 (Tex. Crim. App. 1993)). 
A due process violation occurs if (1) the prosecutor knowingly uses
perjured testimony and (2) the reviewing court cannot determine beyond a
reasonable doubt that the testimony was harmless.  Bagley,
473 U.S. at 679 n.9, 105 S. Ct. at 3381.

          Appellant contends that the State
violated State Bar Rules 3.04(b) and 3.04(c)(3) by presenting Pamela’s allegedly
perjured testimony.  Appellant does not
cite the specific rules, apply the rules to the facts of this case, or
otherwise present authority supporting this contention.  See
Tex. R. App. P. 38.1(i) (“The
brief must contain a clear and concise argument for the contentions made, with
appropriate citations to authorities and to the record.”).  Appellant also did not present this complaint
to the trial court when Pamela testified. 
See Tex. R. App. P. 33.1(a)(1) (requiring timely complaint made
to trial court to preserve issue for appellate review).  Additionally, appellant cites to no authority
holding that the trial court should have found that Pamela committed perjury
when she testified to J.S.’s outcry statement. 
Therefore, we hold that this issue is not preserved for appellate review.

Confrontation Clause Violation

          Appellant also contends in his first
issue that, in permitting the State to rely upon Pamela’s testimony regarding
J.S.’s outcry statement instead of calling J.S. herself to the witness stand,
the trial court denied appellant his Sixth Amendment right to confront the
witnesses against him and improperly shifted the burden of production to
appellant to call J.S. as a witness so that he could cross-examine her.

          Code of Criminal Procedure article 38.072
allows the State to introduce the outcry statement of a child abuse victim as
an exception to the hearsay rule in certain circumstances, in addition to or in
lieu of the child’s testimony at trial. 
Act of June 13, 1985, 69th Leg., R.S., ch. 590, sec. 1, 1985 Tex. Gen.
Laws 2222, 2223 (amended 2009) (current version at Tex. Code Crim. Proc. Ann. art. 38.072 (Vernon Supp.
2010)).  The Court of Criminal Appeals
has held that article 38.072, in some instances, can “operate either to deprive
an accused of his constitutional right to confront the out-of-court child
declarant, or to compel him to call the child to the stand himself in order to
attain that right, in violation of due process and due course of law.”  Holland
v. State, 802 S.W.2d 696, 699 (Tex. Crim. App. 1991) (citing Long v. State, 742 S.W.2d 302, 312 (Tex.
Crim. App. 1987)).  Specifically, when
the State introduces the out-of-court statement of a child declarant into
evidence, pursuant to article 38.072, but does not present the child declarant for
cross-examination at trial and does not demonstrate the reliability of the
child’s out-of-court statement and the necessity for relying upon that
statement instead of live testimony, article 38.072 is unconstitutional as
applied to a defendant.  Id. (citing Long, 742 S.W.2d at 312).  To
preserve this claim for appellate review, the defendant “must lodge a proper
and timely objection at trial.”  Id. (citing Briggs v. State, 789 S.W.2d 918, 921 (Tex. Crim. App. 1990)); Mitchell v. State, 238 S.W.3d 405, 408–09
(Tex. App.—Houston [1st Dist.] 2006, pet. ref’d).

          To obtain admission of an out-of-court
statement of a child, the State can either (1) “announce its intention to call
the child declarant to the stand to allow confrontation without the accused
having to call the child to the stand himself”; or (2) demonstrate that the
out-of-court statement is reliable under the totality of the circumstances in
which it was made and that using the statement is necessary to protect the
welfare of the particular child witness. 
Holland, 802 S.W.2d at 700; Idaho v. Wright, 497 U.S. 805, 819, 110
S. Ct. 3139, 3148 (1990) (“‘[P]articularized guarantees of trustworthiness’
must be shown from the totality of the circumstances, but we think the relevant
circumstances include only those that surround the making of the statement and
that render the declarant particularly worthy of belief.”).  Necessity is determined on a case-by-case
basis, and the State must demonstrate that the particular child witness would
be traumatized by the presence of the defendant and that the resulting
emotional distress would be “more than mere nervousness or excitement or some
reluctance to testify.”  Maryland v. Craig, 497 U.S. 836, 855–56,
110 S. Ct. 3157, 3169 (1990); Marx v.
State, 987 S.W.2d 577, 580 (Tex. Crim. App. 1999) (“The requisite necessity
to justify the use of such a special testimonial procedure in a child abuse
case may be shown if the trial court determines that use of the procedure is
necessary to prevent significant emotional trauma to the child witness caused
by the defendant’s presence.”).  When the
State offers an out-of-court statement of a child witness at trial, the
defendant must object “on the basis of confrontation and/or due process and due
course of law” to preserve a claim that article 38.072 has been
unconstitutionally applied.  Holland, 802 S.W.2d at 699–700.

In Holland, the State introduced the child declarant’s out-of-court
statement into evidence, but it did not call the child witness to testify, nor
did it make “a particularized showing of necessity.”  Id.  However, the defendant did not timely object
to the outcry testimony on confrontation grounds.  Id.  Instead, Holland objected on the ground that
the showing of reliability of the statement was deficient, an objection which
the Court of Criminal Appeals construed as a hearsay objection, not a
confrontation objection.  Id. 
The Holland Court noted that
the hearsay and confrontation doctrines “are neither synonymous nor necessarily
coextensive,” and thus objecting solely on hearsay grounds does not preserve a
confrontation claim for appellate review. 
Id.; Mitchell, 238 S.W.3d at 409; see
also Reyna v. State, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (citing Paredes v. State, 129 S.W.3d 530, 535
(Tex. Crim. App. 2004)); Bargas v. State,
252 S.W.3d 876, 895 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (“Though
appellant objected to Bohannan as an outcry witness, he failed to voice any
objection under the confrontation clause, and, therefore, waived this
argument.”).

Here, the State did not offer J.S.’s out-of-court statement
as evidence.  Rather, it relied upon the
testimony of an outcry witness.  Appellant
filed a written objection to the use of
Pamela Arnett as the outcry witness.  Appellant
based his objection upon the reliability of the outcry statement and on the claim
that Pamela was not the first adult to whom J.S. had made an outcry.  Appellant never raised an objection to
Arnett’s testimony based on confrontation clause, due process, or due course of
law violations.  Appellant’s hearsay
objections did not preserve error on his confrontation clause claim.  See Holland,
802 S.W.2d at 700; Mitchell, 238
S.W.3d at 409.  We therefore hold that,
to the extent appellant contends that the State’s reliance on Pamela’s outcry
testimony and its failure to call J.S. as a witness violated his confrontation
rights and inappropriately shifted the burden of production, appellant failed
to preserve this complaint for appellate review.

Improper Jury Argument

          Appellant further contends in his
first issue that the trial court improperly allowed the State to shift the
burden of proof to appellant during closing argument when the prosecutor stated
that:

And then there is the issue of [J.S.].  And I’m allowed to respond to arguments that
defense counsel makes and said that we should have had her on the stand.  Why didn’t you bring her?  And y’all know why we didn’t put her on the
stand.  I have a great duty to see that
justice is done and I’m forbidden to solicit perjury to get it.

 

Appellant
did not object to this argument.

          Before a defendant may complain on
appeal that a jury argument was erroneous or that an instruction to disregard
could not have cured an erroneous jury argument, the defendant must show that
he objected to the allegedly improper argument and pursued his objection to an
adverse ruling.  Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); Mathis v. State, 67 S.W.3d 918, 927
(Tex. Crim. App. 2002) (“But even if the [erroneous jury argument] was such
that it could not be cured by an instruction, appellant would be required to
object and request a mistrial.”); McDonald
v. State, 186 S.W.3d 86, 91 (Tex. App.—Houston [1st Dist.] 2005, no pet.); see also Tex. R. App. P. 33.1(a)(1).

          Because appellant failed to object and
pursue his objection to an adverse ruling, we hold that appellant did not
preserve his claim of improper jury argument for appellate review.

          We overrule appellant’s first issue.

Non-Disclosure of Brady Material

          In his second issue, appellant
contends that the State failed to disclose exculpatory evidence, specifically,
J.S.’s “full recantation” of the allegations, in violation of Brady v. Maryland.

          In Brady,
the United State Supreme Court held that the prosecution’s suppression of
evidence favorable to a defendant violates due process if the evidence is
material to either guilt or punishment, without regard to the good or bad faith
of the prosecution.  Brady, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97 (1963); Harm v. State, 183 S.W.3d 403, 406 (Tex.
Crim. App. 2006).  When evidence withheld
in violation of Brady is disclosed at
trial, the defendant’s failure to request a continuance waives the error “or at
least indicates that the delay in receiving the evidence was not truly
prejudicial.”  Apolinar v. State, 106 S.W.3d 407, 421 (Tex. App.—Houston [1st
Dist.] 2003), aff’d on other grounds,
155 S.W.3d 184 (Tex. Crim. App. 2005); see
also Jones v. State, 234 S.W.3d 151, 158 (Tex. App.—San Antonio 2007, no
pet.) (holding that defendant must request continuance and present Brady complaint in motion for new trial
to preserve complaint for appellate review); Smith v. State, 314 S.W.3d 576, 586 (Tex. App.—Texarkana 2010, no
pet.) (holding Brady challenge not
preserved because trial court never ruled on complaint).

          Appellant contends that the State
disclosed that J.S. had fully recanted her initial outcry testimony during voir
dire, and the State later referenced the full recantation during the outcry
witness hearing and in opening statements. 
Appellant did not request a continuance, or otherwise ever inform the
trial court that the State had violated Brady
by failing to disclose an alleged full recantation by J.S.  We therefore hold that appellant failed to
preserve his Brady complaint for
appellate review.

          We overrule appellant’s second issue.

 

 

Exclusion of Forensic Interview Recording

In his third issue, appellant
contends that the trial court erred in excluding the recording of J.S.’s CAC
forensic interview because, contrary to the trial court’s ruling, the video did
not constitute inadmissible hearsay.

We review a trial court’s decision
to exclude evidence for an abuse of discretion. 
Zuliani v. State, 97 S.W.3d
589, 595 (Tex. Crim. App. 2003).  A trial
court abuses its discretion only if its decision is “so clearly wrong as to lie
outside the zone within which reasonable people might disagree.”  Taylor
v. State, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); Roberts v. State, 29 S.W.3d 596, 600 (Tex. App.—Houston [1st Dist.]
2000, pet. ref’d).  If the trial court’s
decision is reasonably supported by the record and correct on any theory of law
applicable to the case, we will uphold the decision.  De La
Paz v. State, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); State v. Ross, 32 S.W.3d 853, 855–56
(Tex. Crim. App. 2000).  We review the
trial court’s ruling in light of the evidence before the court at the time it
made the ruling.  Willover v. State, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002)
(citing Weatherred v. State, 15
S.W.3d 540, 542 (Tex. Crim. App. 2000)).

Hearsay is a statement, other than
one made by the declarant while testifying at the trial or hearing, offered in
evidence to prove the truth of the matter asserted.  Tex.
R. Evid. 801(d).  As a general
rule, hearsay is inadmissible “unless it falls within one of the many
exceptions.”  Willover, 70 S.W.3d at 845; Tex.
R. Evid. 802.  To admit evidence
pursuant to a hearsay exception, “the proponent of the evidence must specify
which exception he is relying upon.”  Willover, 70 S.W.3d at 845; Reyna, 168 S.W.3d at 177 (“So it is not
enough to tell the judge that evidence is admissible.  The proponent, if he is the losing party on
appeal, must have told the judge why the evidence was admissible.”).  It is the duty of the appellant, not the
trial court, to articulate the applicable hearsay exception or specify how the
challenged evidence is not hearsay.  Willover, 70 S.W.3d at 845–46.  The party complaining on appeal “must, at the
earliest opportunity, have done everything necessary to bring to the judge’s
attention the evidence rule or statute in question and its precise and proper
application to the evidence in question.” 
Martinez v. State, 91 S.W.3d
331, 335–36 (Tex. Crim. App. 2002).  The
issue is “whether the complaining party on appeal brought to the trial court’s
attention the very complaint the party is now making on appeal.”  Reyna,
168 S.W.3d at 177 (quoting Martinez,
91 S.W.3d at 336); see also Pena v. State,
285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (“To avoid forfeiting a complaint on
appeal, the party must ‘let the trial judge know what he wants, why he thinks
he is entitled to it, and to do so clearly enough for the judge to understand
him at a time when the judge is in the proper position to do something about
it.’” (quoting Lankston v. State, 827
S.W.2d 907, 908–09 (Tex. Crim. App. 1992))). 
Preservation of error also depends on whether the complaint made on
appeal comports with the complaint made at trial.  Pena,
285 S.W.3d at 464 (citing Reyna, 168
S.W.3d at 177).

Before cross-examining Sergeant
Fitzgerald, appellant informed the trial court that he wanted to admit the
recording of J.S.’s forensic interview and question Fitzgerald, who observed
the interview via closed-circuit television, about the contents.  The State objected on hearsay grounds and the
trial court sustained the objection. 
Appellant did not respond to the objection or assert that the recording
fell within a specific hearsay exception. 
After asking Sergeant Fitzgerald whether he had watched the entire
recording, appellant again sought admission of the video.  The trial court responded that the video was
hearsay and neither appellant nor the State could introduce it.  Appellant then asked Sergeant Fitzgerald how
many times J.S. had recanted her initial outcry during the interview.  The State again objected on hearsay grounds
and the trial court sustained the objection. 
Appellant argued that the State “on direct [examination of Sergeant
Fitzgerald] opened the door on the conversation,” but he did not otherwise
argue that the contents of the recording satisfied the requirements of a
particular hearsay exception.

At trial, appellant argued that the
recording was admissible because, by questioning Sergeant Fitzgerald about the
video on direct examination, the State opened the door to the introduction of
the otherwise inadmissible recording.  See, e.g., Schutz v. State, 957 S.W.2d 52, 71 (Tex. Crim. App. 1997)
(“[O]therwise inadmissible evidence may be admitted if the party against whom
the evidence is offered ‘opens the door.’”). 
On appeal, appellant contends that the recording was admissible “to
impeach the complainant, to show fabrication by the complainant, . . . to
impeach the emotional demeanor of the complainant as depicted by Pamela Arnett, . . . [and]
as evidence of a prior inconsistent statement given the number of statements
previously admitted.”  Appellant did not
present any of these rationales for admission of the recording to the trial
court, and appellant does not argue on appeal that the State opened the door to
the admission of the recording by questioning Sergeant Fitzgerald about
it.  Appellant’s statement during trial that
the State “on direct opened the door on the conversation” is insufficient to
alert the trial court that he was asserting that the recording was admissible
to impeach J.S.’s credibility.  See Tovar v. State, 221 S.W.3d 185, 189
& n.2 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding that, although
defense counsel’s objection that he did not think that he had “opened the door”
made in response to State’s assertion that counsel had opened door to admission
of prior consistent statement preserved error on prior consistent statement
basis, objection was insufficient to alert trial court that defendant was also
asserting Rule 107 objection).  Because
appellant did not specify the particular hearsay exception upon which he was
relying for admission of the recording, and his argument in favor of admission
in the trial court does not comport with his argument on appeal, we hold that
appellant failed to preserve for appellate review his contention that the trial
court erroneously excluded the forensic interview recording.  See
Willover, 70 S.W.3d at 845–46; Reyna,
168 S.W.3d at 177; see also Pena, 285
S.W.3d at 464 (holding complaint preserved if argument on appeal comports with
argument at trial).

We overrule appellant’s third
issue.

Sufficiency of the Evidence

In his fourth issue, appellant
contends that the State failed to present legally sufficient evidence to
support his convictions for aggravated sexual assault of a child and indecency
with a child.[2]

A.  
Standard of Review

In a sufficiency of the evidence
review, we view the evidence in the light most favorable to the verdict to
determine whether any rational fact-finder could have found the essential
elements of the offense beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Brooks v. State, 323 S.W.3d 893, 912
(Tex. Crim. App. 2010).  The jurors are the exclusive judges of the
facts, the credibility of the witnesses, and the weight to be given to the
testimony.  Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). 
A jury may accept one version of the facts and reject another, and it
may reject any part of a witness’s testimony. 
Id.  We may not re-evaluate the weight and
credibility of the evidence and substitute our judgment for that of the
fact-finder.  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App.
2007).  We resolve any inconsistencies in
the evidence in favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex.
Crim. App. 2000).

B.  
Aggravated Sexual Assault of a Child
and Indecency with a Child

To prove that appellant committed
aggravated sexual assault of a child, the State was required to establish that
appellant intentionally or knowingly caused the penetration of the sexual organ
of J.S., a child under the age of seventeen, with his finger.  Tex.
Penal Code Ann. § 22.021(a)(1)(B)(i) (Vernon Supp. 2010).  To prove that appellant committed the offense
of indecency with a child, the State had to establish that appellant
intentionally and knowingly engaged in sexual contact with J.S., a child
younger than seventeen, by touching her breast with the intention of arousing
or gratifying the sexual desire of appellant. 
Id. § 21.11(a)(1), (c)
(Vernon Supp. 2010).  The requisite
mental state for indecency with a child—intent to arouse or gratify the sexual desire of any person—can be inferred from the defendant’s conduct,
remarks, and all surrounding circumstances. 
McKenzie v. State, 617 S.W.2d
211, 216 (Tex. Crim. App. 1981); Bazanes
v. State, 310 S.W.3d 32, 37 (Tex. App.—Fort Worth 2010, pet. ref’d).

Outcry testimony admitted pursuant
to article 38.072 is admitted as an exception to the hearsay rule, and is thus
considered substantive evidence, admissible for the truth of the matter
asserted.  Rodriguez v. State, 819 S.W.2d 871, 873 (Tex. Crim. App.
1991).  This evidence has probative
value, and is, by itself, sufficient to support the jury’s verdict.  Id.;
Bargas v. State, 252 S.W.3d at 888
(holding that outcry testimony retains probative value even if contradictory
evidence admitted).  The State has no
burden to present corroborating or physical evidence.  See Lee
v. State, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), aff’d, 206 S.W.3d 620 (Tex. Crim. App.
2006); Eubanks v. State, 326 S.W.3d
231, 241 (Tex. App.—Houston [1st Dist.] 2010, pet. ref’d) (“There is no
requirement that outcry testimony admitted as substantive evidence be
corroborated or substantiated by the victim or independent evidence.”); Benton v. State, 237 S.W.3d 400, 404
(Tex. App.—Waco 2007, pet. ref’d).

A complainant’s recantation of
earlier outcry testimony does not destroy the probative value of that
testimony.  Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).  In Chambers,
the trial court admitted a videotape of the complainant, in which she told the
investigating officer that her stepfather had been molesting her for several
years.  Id. at 459.  Chambers called
the complainant as a witness at trial, and she recanted her earlier
statement.  Id. at 460.  The Court of
Criminal Appeals noted that the jury observed the complainant’s demeanor and
was entitled to reconcile conflicts in the testimony and to disbelieve her
recantation.  Id. at 461; see also Saldaña v. State, 287 S.W.3d 43, 60 (Tex.
App.—Corpus Christi 2008, pet. ref’d) (“Furthermore, when a witness recants
prior testimony, it is up to the fact finder to determine whether to believe
the original statement or the recantation. 
A fact finder is fully entitled to disbelieve a witness’s recantation.”);
Jackson v. State, 110 S.W.3d 626, 631
(Tex. App.—Houston [14th Dist.] 2003, pet. ref’d) (“[A] criminal conviction,
which requires proof beyond a reasonable doubt, may rest on hearsay despite the
lack of the complainant’s testimony or even the complainant’s recantation.”).

Here, Pamela testified that, during
her outcry, J.S. stated that appellant had been touching her over the course of
several years.  According to J.S., the
sexual contact began when J.S. would give her father “pedicures,” and he would
place his feet in her lap and wiggle his toes on J.S.’s “private part.”  The contact progressed to “tongue-kissing,”
appellant touching J.S. on her breast under her bra, digital penetration, two
attempts at vaginal intercourse, and oral sex. 
J.S. told Pamela that most of the incidents occurred in the converted
playroom and would take place after J.S. arrived home from school and before
Harriet returned from work.  Pamela’s
testimony regarding J.S.’s outcry statement alone is sufficient to support the
jury’s verdict.  See Rodriguez, 819 S.W.2d at 873; Bargas, 252 S.W.3d at 888; see
also Lee, 176 S.W.3d at 458 (holding that State need not present
corroborating physical evidence).

          During
her first forensic examination at Memorial-Hermann Hospital, J.S. told Susan
Spjut that:

My father was fondling me
since I was very small, since I was 4 or 5. 
He was, like, playing with me with his hands, my private part, the
front.  He put his fingers in about midway
but not all the way in.  When he tried to
get in, I’d push him off because I was scared. 
He kissed me, what they call French-kissing, in the mouth, his
tongue.  He would stick his hands in my
bra and squeeze my breast.  He said, “You
know you like it.”  I didn’t like
it.  He told me to promise not to tell
anybody.  The last time was December 1st,
fondling.  I made sure I wasn’t alone
with him after that.

 

Sergeant Fitzgerald stated that, during her forensic
interview, J.S. recanted the allegations relating to aggravated sexual assault,
but she “maintain[ed] the indecency” allegations.  J.S. revealed that she lied regarding the
sexual assault allegations because she was angry with appellant over a
financial dispute that he had had with Harriet. 
Dr. Lyn testified that, during the forensic medical examination at the
CAC, J.S. stated that appellant touched her on her “breasts and butt,” but she
also “wanted to make it clear to [Lyn] that she was lying about
penetration.  [J.S.] said she was afraid
of a false report before the trial.”  Lyn
testified that she had never heard a child say this during an examination
before, and the statement struck her as unusual.  Lyn asked if J.S. had told a lie when she
went to the hospital, and J.S. stated that she “told Ms. Susan [Spjut] the
truth” and she was telling Dr. Lyn the truth when she said that appellant touched her inappropriately.

          Pamela
and Patrick Arnett both testified that they were aware that J.S. had partially
recanted her outcry, but they opined that they believed that her initial outcry
was true.  Pamela stated that J.S. called
her the day after the outcry and asked her not to inform the police because she
was concerned that her parents would get in trouble and she did not know who
would pay the family’s bills if that happened. 
Pamela expressed concern that, the day after J.S. informed the police,
Harriet, who had always seemed reluctant to involve the police, stopped
returning Pamela’s calls, suggesting that perhaps Harriet influenced and
motivated J.S.’s partial recantation.

          Even
if the complaining witness recants, her earlier outcry testimony retains
probative value.[3]  Chambers,
805 S.W.2d at 461.  In this situation, it
is the role of the fact finder, who weighs the evidence and evaluates
credibility, to determine whether to believe the original statement or the
recantation, and “[a] fact finder is fully entitled to disbelieve a witness’s
recantation.”  Saldaña, 287
S.W.3d at 60; see also Maldonado v. State,
887 S.W.2d 508, 509 (Tex. App.—San Antonio 1994, no pet.) (“Just because the
complaining witness recants incriminating testimony does not mean the evidence
is insufficient.”).  In convicting
appellant, the jury made a credibility determination to believe J.S.’s initial
outcry instead of her recantation and appellant’s testimony denying the
allegations and stating that he had never been alone with his daughter.  We afford almost complete deference to this
determination.  See Lancon v. State, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

          Thus,
viewing the evidence in the light most favorable to the verdict, we hold that
the evidence was sufficient for a rational fact finder to have found beyond a
reasonable doubt that appellant caused the penetration of J.S.’s sexual organ
with his finger and that appellant, with the intent to arouse or gratify his
sexual desire, touched J.S.’s breast.

          We
overrule appellant’s fourth issue.

Admission of Extraneous Offense Evidence

Appellant contends, in his fifth
issue, that the trial court erred in admitting evidence of appellant’s
extraneous bad acts involving J.S. because, according to appellant, evidence of
these acts is admissible only after the credibility of the complainant has been
attacked.[4]

Appellant filed a pre-trial motion
in limine, seeking to exclude all “extraneous crime or misconduct evidence,
which is not alleged in the indictment,” including allegations that appellant
kissed J.S. when she was four years old, attempted vaginal intercourse with
J.S. when she was five years old, and kissed her and attempted oral sex with
her when she was seven years old.  The
trial court denied appellant’s motion in limine.

A motion in limine “is a
preliminary matter and normally preserves nothing for appellate review.”  Fuller
v. State, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008) (citing Gonzales v. State, 685 S.W.2d 47, 50
(Tex. Crim. App. 1985)); Johnson v. State,
981 S.W.2d 759, 760 (Tex. App.—Houston [1st Dist.] 1998, pet. ref’d) (“The
general rule is that a motion in limine does not preserve error.”).  To preserve error regarding the subject
matter of a motion in limine, the appellant must object at the time the subject
is raised during the trial.  Fuller, 253 S.W.3d at 232; see also Tex. R. App. P. 33.1(a)(1)(A) (stating that, to preserve
error, appellant must make timely request, objection, or motion stating grounds
for ruling with sufficient specificity to make trial court aware of the
complaint).  If the appellant does not
object at the time the subject matter is introduced, the appellant waives
appellate review of any error associated with the evidence.  Fuller,
253 S.W.3d at 232–33.

During trial, Pamela testified that
J.S. told the Arnetts about several instances of sexual contact between
appellant and herself.  Pamela testified
that J.S. told them that the abuse began by appellant’s placing his feet in
J.S.’s lap and wiggling his toes on her “private part.”  The abuse then progressed to “tongue-kissing,”
touching J.S. on her breast under her bra, attempted vaginal intercourse,
digital penetration, and oral sex. 
Appellant did not object to this testimony.

Because appellant did not object to
the introduction of the extraneous bad acts evidence at the time Pamela
testified regarding J.S.’s outcry statement, we hold that appellant failed to
preserve for appellate review his contention that the trial court erroneously
admitted this evidence.

We overrule appellant’s fifth
issue.

Ineffective Assistance of Counsel

          Finally,
appellant contends in his sixth issue that his trial counsel rendered
ineffective assistance by failing to request a limiting instruction in the
written charge restricting the jury’s consideration of appellant’s alleged
extraneous bad acts involving J.S. unless it found beyond a reasonable doubt
that appellant had committed those extraneous acts.

To prevail on a claim of
ineffective assistance of counsel, the appellant must demonstrate, by a
preponderance of the evidence, (1) that his trial counsel’s performance was
deficient and (2) that a reasonable probability exists that, but for the
deficiency, the result of the proceeding would have been different.  Strickland
v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984).  The appellant must first show that his
counsel’s performance fell below an objective standard of reasonableness, which
does not require showing that counsel’s representation was without error.  Thompson
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); Robertson v. State, 187 S.W.3d 475, 483 (Tex. Crim. App.
2006).  The second prong of Strickland requires the appellant to
demonstrate prejudice—a
reasonable probability that, but for his counsel’s unprofessional errors, the
result of the proceeding would have been different.  Strickland,
466 U.S. at 694, 104 S. Ct. at 2068; Thompson,
9 S.W.3d at 812.  A reasonable
probability is a probability sufficient to undermine confidence in the
outcome.  Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.  We indulge a strong presumption that
counsel’s conduct fell within the wide range of reasonable professional
assistance, and therefore the appellant must overcome the presumption that the
challenged action constituted “sound trial strategy.”  Id.
at 689, 104 S. Ct. at 2065; McFarland v.
State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).

          Failure
to request a jury instruction may, under the facts of a particular case, render
the defense attorney’s assistance ineffective if the trial court would have
erred in refusing such an instruction had counsel requested it.  See
Vasquez v. State, 830 S.W.2d 948, 951 (Tex. Crim. App. 1992).  The Court of Criminal Appeals has held that:

[A] limiting instruction concerning the use of
extraneous offense evidence should be requested, and given, in the guilt-stage
charge only if the defendant
requested a limiting instruction at the time the evidence was first
admitted.  When the defendant has
properly requested a limiting instruction in the jury charge, the trial court
must also include an instruction on the State’s burden of proof at that time.

 

Delgado v. State, 235 S.W.3d 244, 251 (Tex. Crim.
App. 2007) (emphasis added).

Here, appellant contends only that his counsel’s
failure to request an instruction in the written charge constituted ineffective
assistance.  Appellant did not object or
request a Rule 404(b) limiting instruction at the time Pamela testified to
appellant’s extraneous acts involving J.S. 
Because appellant did not request a limiting instruction at the time of
Pamela’s testimony, the extraneous act evidence became “part of the general
evidence and [could] be used for all purposes,” and therefore a limiting
instruction in the charge was not necessary. 
See id. (citing Hammock v. State, 46 S.W.3d 889, 895
(Tex. Crim. App. 2001)).  Under these
circumstances, the trial court would not have erred in refusing to include a
limiting instruction in the charge had appellant requested one; thus, defense counsel’s
failure to request submission of a limiting instruction in the charge does not
constitute deficient performance.  See Vasquez, 830 S.W.2d at 951 (holding
that failure to request instruction when trial court would have erred in
refusing instruction constituted deficient performance under Strickland); Hammock, 46 S.W.3d at 895 (“Because the evidence in question was
admitted for all purposes, a limiting instruction on the evidence was not
‘within the law applicable to the case,’ and the trial court was not required
to include a limiting instruction in the charge to the jury.” (quoting Tex. Code Crim. Proc. Ann. art. 36.14
(Vernon 2007))).

Because appellant has not established that his counsel’s failure
to request a jury instruction in the charge limiting the use of the extraneous
bad acts evidence constituted deficient performance under the first prong of Strickland, we hold that appellant has
not demonstrated that he received ineffective assistance of counsel.

We overrule appellant’s sixth issue.




 

Conclusion

We affirm the judgment of the trial
court.

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Higley, and Bland.

Do
not publish.   Tex. R. App. P. 47.2.

 

 











[1]
          See Tex. Penal Code Ann.
§§ 21.11(a)(1), 22.021(a)(1)(B)(i) (Vernon Supp. 2010).  The charge for indecency with a child was
tried in trial court cause number 1197741 and resulted in appellate cause
number 01-09-00410-CR.  The charge for
aggravated sexual assault of a child was tried in trial court cause number
1197742 and resulted in appellate cause number 01-09-00411-CR.





[2]
          Appellant briefly contends that
the State failed to present factually sufficient evidence to support his
conviction.  The Court of Criminal
Appeals overruled Clewis v. State and
its progeny and abolished factual sufficiency review in Brooks v. State.  323 S.W.3d 893, 912 (Tex.
Crim. App. 2010) (directing that evidence be reviewed only under the
sufficiency standard described in Jackson
v. Virginia); Ervin v. State, No.
01-10-00054-CR, 2010 WL 4619329, at *2–4 (Tex. App.—Houston [1st Dist.] Nov.
10, 2010, no pet. h.) (construing majority holding in Brooks).  We therefore
construe appellant’s contention as solely challenging the sufficiency of the
evidence.





[3]
          There is no evidence that J.S.
ever recanted the indecency with a child allegations.  J.S. consistently stated, in her initial
outcry to Pamela, her examination with Spjut, her forensic interview, and her
examination with Lyn, that appellant touched her breasts under her bra.





[4]
          Section 2 of article 38.37 of
the Code of Criminal Procedure provides that: 
“Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of
other crimes, wrongs, or acts committed by the defendant against the child who
is the victim of the alleged offense shall be admitted for its bearing on
relevant matters, including (1) the state of mind of the defendant and the
child; and (2) the previous and subsequent relationship between the defendant
and the child.”  Tex. Code Crim. Proc. Ann. art. 38.37 § 2 (Vernon Supp.
2010).  The statute does not restrict
admission of this evidence to introduction solely after an attack on the
complainant’s credibility.