Kip Lee BENTON, Appellant

v.

The STATE of Texas, Appellee.

No. 10–06–00231–CR.

Court of Appeals of Texas, Waco.

Sept. 12, 2007.

---

Cindy L. Buckner, Waxahachie, for appellant.

Joe F. Grubbs, Ellis County Dist. Atty., Waxahachie, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

Kip Benton was charged by indictment with eight counts of aggravated sexual assault of a disabled individual. A jury found him guilty on two counts and assessed a sixty-year prison sentence on each count. The trial court ordered the sentences to be served consecutively. Benton raises three issues in this appeal. We will affirm.

### Legal Sufficiency of the Evidence

Benton's second and third issues complain that the evidence is factually and legally insufficient to support the jury's guilty verdict. We will first review his third issue, which specifically asserts that there is no legally sufficient evidence that B.A., the victim, was a disabled person.

When reviewing a challenge to the legal sufficiency of the evidence to establish the elements of a penal offense, we must de-

termine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our duty is to determine if the finding of the trier of fact is rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State,* 828 S.W.2d 418, 422 (Tex.Crim.App. 1992). In doing so, any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State,* 30 S.W.3d 394, 406 (Tex.Crim.App.2000).

A person commits the offense of aggravated sexual assault of a disabled individual, as alleged in counts one and three, if the person (1) intentionally or knowingly (2) caused the sexual organ of the victim to contact or penetrate the mouth of the person (3) without the victim's consent, and (4) the victim is a disabled individual. *See* Tex. Pen.Code Ann. § 22.021(a)(1)(A)(iii), (a)(1)(C), (b)(2) (Vernon Supp.2006). In a prosecution under section 22.021, the term "disabled individual" has the meaning assigned by section 22.04(c), which defines "disabled individual" as "a person older than 14 years of age who by reason of age or physical or mental disease, defect, or injury is substantially unable to protect himself from harm or to provide food, shelter, or medical care for himself." *Id.* § 22.04(c)(3).

■ B.A.'s mother testified that B.A. was nineteen at the time of trial and lived in a group home for the disabled that provides them shelter and work. B.A. lives there because he cannot live on his own due to permanent brain damage that he suffered when he was hit by a truck at age twelve; he cannot provide food, care, and shelter for himself. His mother said that when B.A. was fifteen and sixteen (his

ages when the alleged offenses occurred), B.A. lacked the ability to live independently, could not defend himself physically, and could not provide food, care, and shelter for himself.

B.A.'s father testified that B.A. was struck by a truck, was in a coma for three weeks, and was hospitalized for three months. He suffered permanent damage to his brain stem that causes severe thought process delays. He too said that B.A. cannot physically defend himself, and B.A. cannot hold a job or provide for himself. The manager of the group home said that the persons who live there are mentally retarded or mentally handicapped persons who are unable to live on their own. B.A.'s special ed counselor testified that B.A. had cognitive problems from his traumatic brain injury that impacted his frontal lobe; he has disinhibition, sensitivity, and polarized thinking.

Jim Harris testified that he knew B.A. from school and that B.A. was treated the same as other kids at school. While he was not picked on, other students would put B.A. up to things like saying or doing something to someone because B.A. was real vulnerable. Harris knew that B.A. was brain-damaged but said that B.A. could defend himself. B.A. could act out or repeat movie and television parts accurately. In rebuttal, one of B.A.'s special ed teachers said that B.A. was teased by other students and he spent a lot of time in her classroom because it was a safe place.

Benton argues that there no evidence of B.A.'s diagnosis and that B.A.'s ability to testify was evidence he was not disabled. The jury observed B.A. while he was testifying, and in addition to the testimony of B.A.'s parents and counselor about his brain injury, the counselor said that B.A.'s IQ tested at 60. Viewing the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have

found beyond a reasonable doubt that B.A. was a disabled individual as defined by section 22.04(c)(3). Issue three is overruled.

### Factual Sufficiency of the Evidence

In his second issue, Benton argues that the evidence is factually insufficient because the only evidence of the offenses was B.A.'s testimony and there was no corroborating testimony or physical evidence.

In a factual sufficiency review, we ask whether a neutral review of all the evidence, though legally sufficient, demonstrates either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the factfinder's verdict clearly wrong and manifestly unjust. *Watson v. State,* 204 S.W.3d 404, 414–15 (Tex. Crim.App.2006); *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000). "The court reviews the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact." *Johnson,* 23 S.W.3d at 7 (quoting *Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim.App.1996)). The appellate court "does not indulge in inferences or confine its view to evidence favoring one side of the case. Rather, it looks at all the evidence on both sides and then makes a predominantly intuitive judgment. . . ." *Id.* (quoting William Powers and Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Texas L.Rev. 515, 519 (1991)). The nature of a factual sufficiency review authorizes an appellate court, although to a very limited degree, to act as the so-called "thirteenth juror" to review the factfinder's weighing of the evidence and disagree with the factfinder's determination. *Watson,* 204 S.W.3d at 416–17.

■ While Ellis County Sheriff's Department officers were interviewing B.A.'s

younger brother at B.A.'s home, B.A. asked to speak to the officers. In his father's presence, B.A. made an outcry that he had been sexually assaulted. The next day an officer and an investigator interviewed B.A., who told them that Benton had sexually assaulted him at Benton's home and auto shop in the summer of 2002 or 2004. B.A. said that on one occasion, Benton photographed him. A search warrant was obtained, and a camera was seized; it had no photographs of B.A., and no pornography or anything incriminating was found. Benton confirmed to officers that B.A. had worked for him in the time periods alleged by B.A.

B.A. testified that he met Benton through his cousin, and they started working for him for twenty dollars a day. B.A. liked Benton and hanging out with him; when B.A. worked for Benton, he would also go home with him. On the first occasion, B.A.'s cousin took him to Benton's house, and Benton said he wanted to give B.A. a test on cars. B.A. and Benton went into Benton's computer room, where an oral sexual assault occurred, while the cousin and B.A.'s brother waited outside. Benton took photos of B.A. and gave him $20.

B.A. described two other incidents at Benton's home. The next incident was the same as the first, except no photos were taken. On the other occasion, anal sex occurred. Benton again paid him $20 and said he would give him $20 every time. B.A. described two incidents at Benton's shop similar to those at Benton's home. During these occasions, Benton would send the cousin to test drive a car and would lock the door.

B.A.'s counselor said that B.A. never discussed sexual abuse with her. James Low, Benton's cousin who had known Benton for sixteen years, testified that Benton

had never done anything "weird" to him. Matthew Rogers said he had known Benton since 1994, when Benton was a youth minister.

■ B.A. testified that Benton committed the offenses of which he was convicted. A complainant's uncorroborated testimony alone is sufficient to support a conviction for aggravated sexual assault under section 22.021. TEX.CODE CRIM. PROC. ANN. art. 38.07 (Vernon 2005) (requirement that victim inform another person within one year does not apply to person under 17 at time of offense); *see Garcia v. State*, 563 S.W.2d 925, 928 (Tex.Crim.App.1978); *Abbott v. State*, 196 S.W.3d 334, 341 (Tex. App.-Waco 2006, pet. ref'd). The State had no burden to produce corroborating or physical evidence, and the jury determines the credibility of the witnesses and may "believe all, some, or none of the testimony." *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App.1991). Considering all of the evidence in a neutral light, we find that the jury was justified in finding Benton guilty. *Watson*, 204 S.W.3d at 415. We overrule Benton's second issue.

## Motion for New Trial

Benton's first issue complains that the trial court abused its discretion in denying his motion for new trial, which argued that the jury had "received other evidence" after retiring to deliberate. We review a trial court's denial of a motion for new trial for an abuse of discretion. *Salazar v. State*, 38 S.W.3d 141, 148 (Tex.Crim.App. 2001). Under that standard of review, we review the trial court's ruling in light of what was before the trial court at the time the ruling was made, and we must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim.App.2000).

■ The trial court admitted into evidence Benton's camera that officers had seized. After the jury's first day of deliberations, the court reporter noticed that the camera's memory chip had been taken out. The next morning, the trial judge informed the parties that he had instructed the court reporter not to send the chip back to the jury when they resumed deliberations. After the jury returned a guilty verdict on the two counts, the defense moved for a mistrial for jury misconduct because the jury may have viewed the images on the chip and those images were not admitted into evidence. The trial court denied the mistrial motion.

Benton filed a motion for new trial, alleging a violation of Rule of Appellate Procedure 21.3(f) because the jury had received and viewed evidence that had not been admitted. At a hearing on the motion, the presiding juror testified that some of the jurors (about one-third of them) used the camera to view photos on the chip. The photos that he saw were of a parade and of home life (backyard-type events, including children who Benton said in the punishment phase were his nephews), "nothing special." The State offered and the trial court admitted printouts of the photos at the hearing, and the juror identified them as the photos that he and some of the other jurors had viewed. The lead prosecutor testified that he was not aware that there were photos in the camera and that he had not intended to present the photos as evidence at trial. The trial court denied the motion for new trial, noting that the photos were neither prejudicial nor obscene and that no disputed issue was addressed in any photo.

■ Rule 21.3(f) provides that a trial court must grant a new trial if, "after retiring to deliberate, the jury has received other evidence." TEX.R.APP. P. 21.3(f). A two-prong test must be met for

a defendant to get a new trial under this rule: (1) evidence must have been received by the jury, and (2) the evidence must be detrimental or adverse to the defendant. *Bustamante v. State,* 106 S.W.3d 738, 743 (Tex.Crim.App.2003). Although the prosecutor stated that he did not intend to offer the photos in the camera as evidence, the State argues that the photos were not "outside" or "other" evidence because the camera was admitted without objection or limitation. We need not decide whether the photos were "other" evidence "received" by the jury. In concluding that the photos were "innocuous at best" and were not prejudicial to Benton, on the second prong the trial court did not abuse its discretion. We overrule Benton's first issue.

Having overruled Benton's three issues, we affirm the trial court's judgment.