

# IN THE
# TENTH COURT OF APPEALS

No. 10-08-00070-CR

**CATARINO JESUS SANDOVAL,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 54th District Court
McLennan County, Texas
Trial Court No. 2007-178-C2**

# MEMORANDUM OPINION

A jury convicted Catarino Jesus Sandoval of aggravated robbery and sentenced him to sixteen years in prison and a $10,000 fine. In three issues, Sandoval contends that: (1) the State violated due process by knowingly using false testimony; (2) the State violated due course of law by negligently using false testimony; and (3) the trial court abused its discretion by denying his motion for new trial. We affirm.

**FACTUAL BACKGROUND**

Kathy Ryall was exiting her vehicle and preparing to enter Richland Mall when a man approached her from behind, pressed a "sharp" object against her back, and instructed her to give him her purse. When Ryall hesitated, the man pressed harder and ordered her to give him her purse. As Ryall turned, the man grabbed her purse and ran. Ryall did not see the man's face, but described him as a young Hispanic male of medium build, with dark hair, wearing a white t-shirt and blue jeans, and not very tall. She observed the man enter a "white, small sedan." She saw the driver of the vehicle and memorized the license plate. She identified the driver, Catarino Sandoval's cousin Tommy Sandoval, from a photographic lineup.

Tommy testified that sometime between 8:00 and 9:00 a.m., "8:40-something" per the car radio, he and Sandoval drove to Wal-Mart from Sandoval's mother's house, about a twenty-minute drive. They drove around the parking lot for about thirty minutes. From there, they drove to the mall. This drive takes about ten to fifteen minutes, but Tommy testified that they arrived within ten minutes, probably five minutes. When they spotted Ryall, Tommy parked and Sandoval opened a pocket knife and exited the vehicle. He returned with both the knife and Ryall's purse. Tommy kept $40 of the $400 found in Ryall's purse and used Ryall's credit card to purchase gasoline.

Belinda Alaniz, Sandoval's girlfriend and the owner of the vehicle, testified that Sandoval dropped her off at work around 8:00 a.m. Around lunchtime, he called to inform her that "something stupid" had happened and the car was at a park. Officers DeAlan Adams and Mike Bradley were present during this phone call and testified that

Alaniz told them that Sandoval said, "I've done something bad." They located the vehicle at a park approximately eight to ten miles from the mall. Sandoval's left palm print was found on the passenger's side of the vehicle. Ryall's checkbook and driver's license were inside the vehicle.

Adams testified that he received the call about the robbery around 10:00 a.m. and believed that the robbery occurred around 9:50 a.m. Ryall testified that she arrived at the mall close to 10:00 a.m. 9-1-1 records showed that the call came in at 10:18 a.m.

Crystal Perales, Sandoval's former girlfriend, testified that she spoke with Sandoval on the telephone from 9:20 a.m. to 9:34 a.m. She testified that Sandoval called from his mother's landline, not a cellular telephone. She knew this because she saw the number on her caller ID, Sandoval had previously called from that number, and she checked the number on 411.com, which listed the number as a landline.

The State requested fifteen minutes to investigate the status of this telephone number. Investigator Don Marshall contacted Southwestern Bell security and learned that the number had been assigned to a T-Mobile cellular telephone since September 2004. He did not inquire as to the owner of the number or whether the number was assigned to a cellular telephone on the day of the robbery.

**USE OF FALSE TESTIMONY**

Arguing that Marshall's testimony was false or misleading, Sandoval contends in his first two issues that: (1) the State knowingly used false testimony in violation of his due process rights provided by the Fourteenth Amendment to the United States

Constitution; and (2) the State negligently used false testimony in violation of his due course of law rights provided by article I, section 19 of the Texas Constitution.

A defendant must object to the State's use of allegedly false evidence to preserve the complaint for appeal. *Davis v. State*, No. 10-06-00009-CR, 2008 Tex. App. LEXIS 7146, at *18-19 (Tex. App.—Waco Sept. 24, 2008, no pet. h.) (citing *Haliburton v. State*, 80 S.W.3d 309, 315 (Tex. App.—Fort Worth 2002, no pet.)); *see* TEX. R. APP. P. 33.1. At the time of Marshall's testimony that the number was assigned to a cellular telephone, Sandoval was aware of contrary information suggesting that the number was assigned to a landline. He could have objected to Marshall's testimony at trial, but failed to do so. His first and second issues are not preserved for appellate review.

### MOTION FOR NEW TRIAL

In his third issue, Sandoval challenges the denial of his motion for new trial on grounds that the State used false or misleading evidence to negate his alibi defense. We review a trial court's denial of a motion for new trial for abuse of discretion. *Benton v. State*, 237 S.W.3d 400, 404 (Tex. App.—Waco 2007, pet. ref'd) (citing *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001)).

In his motion for new trial, Sandoval argued that he did not receive a fair trial because the State used "inaccurate hearsay testimony", *i.e.*, Marshall's testimony that the telephone call to Perales was made from a cellular telephone rather than a landline, which "completely destroyed [his] alibi defense." In an affidavit, Guy Cox, Sandoval's trial attorney, described this testimony as "inaccurate and potentially misleading." Cox opined that Perales's testimony that Sandoval called her from a landline approximately

twenty-six minutes before the robbery, coupled with Tommy's testimony that he and Sandoval drove around for about an hour before the robbery, made Sandoval's "presence at the robbery very remote." Cox was surprised by Marshall's testimony because he had "received information to the contrary and did not believe its veracity was an issue." Also attached to Sandoval's motion was a computer printout from 411.com listing the number as a landline and telephone book pages showing the number in the residential listings.

Sandoval subsequently filed telephone records from the AT&T custodian of records, which identified the number as a landline at the time of the robbery. Additional AT&T records showed an incoming call to Perales from this number at 8:29 a.m., a three-minute call, and 9:20 a.m., a fourteen-minute call.

At the hearing on Sandoval's motion, Wanda Mathews, AT&T custodian of records, testified that the number was a landline at the time of the robbery. Mathews testified that cellular telephone numbers are not listed in the residential pages of the telephone book, and Sandoval introduced residential pages from the AT&T telephone book, which listed the number. According to Mathews, the address listed in the telephone book matched the address on AT&T's billing records. She further testified that it was possible that the number was assigned to a cellular telephone at some point in the past.

Cox testified that Marshall's testimony "seriously undermined" Sandoval's alibi defense. He had hoped that Perales's testimony establishing that Sandoval was possibly at a different place at a different time than testified to by Tommy would

convince the jury to find Sandoval not guilty. On cross-examination, he agreed that the telephone records and books were not new evidence. The State provided Cox with a Google map showing the distance from the house to the mall as 2.9 miles or seven minutes. Cox agreed that a forty-four-minute time period existed between the end of the call to Perales at 9:34 and the 9-1-1 call at 10:18; thus, Sandoval had time to get to the mall even assuming that the number was a landline. However, he did not believe that the 9-1-1 call was the most significant, as Ryall had estimated that the robbery occurred at 9:50.

The prosecutor testified that Ryall did not identify a specific time when the robbery occurred. She believed that the robbery occurred no earlier than 10:05 because Ryall had testified that she was late for work and the mall opens at 10:00. The prosecutor also believed that, assuming the number was assigned to a landline and the robbery occurred sixteen minutes after the call ended, Sandoval still had time to commit the robbery. In fact, she was able to drive the route from Sandoval's home to the mall in seven minutes and seventeen seconds, after stopping at a major intersection and driving the forty mile-per-hour speed limit.

The prosecutor further testified that, although she had subpoenaed Perales as a punishment witness, she learned about the landline allegation during Perales's testimony. She requested "five minutes" to investigate this testimony and asked Marshall to contact the telephone company. She was not present when he contacted Southwestern Bell; however, she also testified that the specific digits of the number indicated to her that it was assigned to a cellular telephone, which made sense

according to Tommy's testimony. She would not have put someone on the stand to say that the number was assigned to a cellular telephone when it had not been.

At the conclusion of the hearing, the trial court noted that Sandoval's mother was "in the courtroom during the trial when the defense was putting on their evidence." He denied Sandoval's motion.

**Analysis**

A defendant is entitled to a new trial based on the State's use of false evidence where: (1) the State "used" the testimony; (2) the testimony was "false"; (3) the testimony was "knowingly used"; and (4) if these questions are affirmatively answered, there is a reasonable likelihood that the false testimony could have affected the judgment of the jury. *Ramirez v. State,* 96 S.W.3d 386, 394-95 (Tex. App.—Austin 2002, pet. ref'd) (citing *Mooney v. Holohan*, 294 U.S. 103, 55 S. Ct. 340, 79 L. Ed. 791 (1935); *Pyle v. Kansas*, 317 U.S. 213, 63 S. Ct. 177, 87 L. Ed. 214 (1942); *Napue v. Illinois*, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959)). A defendant need not show that a witness "knew the testimony was false or otherwise harbored a sufficient culpable mental state to render the witness subject to prosecution for perjury" or that the "witness's specific factual assertions were technically incorrect or 'false.'" *Id.* at 395. "It is sufficient if the witness's testimony gives the trier of fact a false impression." *Id*.

Evidence presented at the hearing on Sandoval's motion for new trial establishes that the number is a landline and that Perales received a telephone call from that number on the morning of the robbery. Marshall's testimony to the contrary is false and misleading. The State used this testimony during closing to argue that Sandoval

called Perales from a cellular telephone while driving around looking for someone to rob. The State further argued that Sandoval failed to present anything to rebut this fact.

The record contains no evidence suggesting that Marshall or the State knew the testimony was inaccurate, or even potentially inaccurate, at the time the testimony was elicited. Nor does the record establish that the State should have known that Marshall's testimony was false or misleading. The evidence presented at trial did not conclusively establish that the number was assigned to either a landline or a cellular telephone. Neither the State nor Sandoval provided the jury with documentary evidence confirming their respective positions or sought additional time to do so. Not until the motion for new trial did Sandoval present evidence other than Perales's testimony to establish the number as a landline.

In fact, at the motion for new trial hearing, Mathews testified that the telephone records would have been available at the time of trial. She would have appeared at trial with the records had she received a subpoena. Neither were the telephone book pages new. Sandoval could have procured other evidence supporting his contention that the number was assigned to a landline, but he failed to do so.

Even assuming that the State was aware of or should have been aware of the error and refused to correct it, we cannot say beyond a reasonable doubt that Marshall's testimony affected the judgment. During closing argument, the State presented the possibility that, assuming the number was assigned to a landline, the call to Perales ended in time to allow Sandoval to arrive at the mall with sufficient time to commit the robbery. The call to Perales ended at 9:34, travel time to the mall takes five to ten

minutes, and the 9-1-1 call came in at 10:18. Moreover, Sandoval's palm print was found on the passenger side of the vehicle.

Even had the State presented no evidence that the number was assigned to a cellular telephone, the jury could still find Sandoval guilty of robbery by: (1) discounting Tommy's testimony and determining that Sandoval committed the robbery after ending the conversation with Perales; or (2) accepting Tommy's testimony and determining that Perales' testimony failed to conclusively establish that the number belonged to a landline. As the sole judge of the weight and credibility of witness testimony, the jury was entitled to resolve any inconsistencies in the witness's testimony and decide which evidence to believe.[1] *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008).

In summary, we cannot say that the trial court abused its discretion by denying Sandoval's motion for new trial. We overrule issue three.

The judgment is affirmed.

FELIPE REYNA
Justice

Before Chief Justice Gray,
     Justice Vance, and
     Justice Reyna
Affirmed
Opinion delivered and filed November 5, 2008
Do not publish
[CR25]

---

[1] Sandoval also attempted to show that Tommy was either lying or mistaken when he identified Sandoval as the robber. According to the record, Sandoval's brother Rocky helped abandon Alaniz's car and his earnings statement was found in the car. The jury was at least presented with the possibility that Rocky, not Sandoval, committed the robbery.