Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio

★ ★ ★ ★ ★ ★

## MEMORANDUM OPINION

No. 04-07-00697-CR

Morris **MCGEE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CR-8262
Honorable Bert Richardson, Judge Presiding

Opinion by:     Steven C. Hilbig, Justice

Sitting:     Catherine Stone, Chief Justice
Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice

Delivered and Filed:   March 11, 2009

AFFIRMED

Morris McGee was convicted by a jury of three counts of aggravated sexual assault on E.S.

The trial court assessed punishment of fifteen years incarceration for each count.  McGee appeals

the judgment, arguing the evidence was legally and factually insufficient to support the findings of

guilt.  We affirm the trial court's judgment.

## BACKGROUND

McGee and E.S. began dating in 2004. During that year, E.S., her children, and two nephews she was raising moved in with McGee. The relationship ended in 2005, and E.S. moved her family out of the house. By all accounts, McGee and E.S. remained friends and saw each other on a regular basis, as he was close with her two-year-old nephew, Aaron. E.S. kept some of her property at McGee's house because she did not have room for them at her current residence. Because of this, she kept a key to his house.

The morning of November 3, 2005, E.S. drove to McGee's home with Aaron. E.S. and McGee have radically different accounts of what happened that day. According to E.S., McGee called her the night before and told her she had received mail at his house marked "urgent." She made arrangements with McGee to retrieve the mail. When she arrived, McGee took Aaron into the house, and E.S. remained in the car. E.S. testified McGee returned, forcibly removed her from the car, and drug her into the house straight to his bedroom. E.S. claims McGee told her he had seen her with her new boyfriend the previous night. McGee revealed details that gave E.S. the impression he had been watching them through the bedroom window — he knew what was on the television, the color of the sheets on the bed, and what she was wearing. McGee threatened E.S. with what she described as a hunting knife, bound and gagged her, raped her vaginally and anally, and performed oral sex on her. E.S. testified she thought was not going to live. During the course of the assault, McGee put "hickeys" all around her neck and said her boyfriend would "be mad now." After assaulting E.S., McGee allowed her to leave and told her if she called the police, to tell them they would not take him alive.

E.S. testified she drove to a local hospital after she left McGee's house. She reported the assault to a police officer summoned on her behalf. The first police officer to speak with E.S. testified E.S. had marks on both her wrists. He also noted she had a swollen lip and a scratch on her face. The officer took E.S. to the police station so investigators could obtain her statement. E.S. was later driven to Methodist Hospital for a rape examination. The nurse who examined E.S. found multiple tears in her vaginal area indicative of "forceful penetration." She noted numerous linear tears to her anus that oozed blood, suggesting recent injury. The nurse also found E.S. had swollen eyelids, a abrasion on her nose, a scratch on her upper lip, soreness to her jaw, and bruising on her neck.

McGee testified E.S. called him the morning of the incident and asked him to go with her to Walmart to have her oil changed. According to McGee, E.S. called McGee several times before she reached his house. When she arrived, McGee carried Aaron into the house; E.S. followed and went directly to a bedroom. McGee testified he got food and a drink for Aaron, then went into the bedroom and began talking with E.S. After awhile, they began kissing, and then had consensual sex. McGee admitted to engaging in vaginal and anal sex with E.S., but testified, contrary to E.S.'s assertions to the jury, it was not their first time to engage in anal sex. He denied performing oral sex on E.S. He denied showing E.S. a knife at any time and maintained he never bound her hands. McGee testified E.S. never indicated she was not a willing participant in their sexual encounter. McGee testified he went into the living room and watched TV with Aaron after having sex. E.S. got dressed and McGee testified she was "fine" when she left. The only negative reaction McGee remembered was E.S. commenting about the hickeys on her neck and chest. McGee testified he saw none of the injuries described by the State's witnesses on E.S. when she left his house.

## LEGAL SUFFICIENCY

When considering a legal sufficiency challenge, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). We affirm the trial court's judgment if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997). The jury is the exclusive judge of credibility and the weight to be given to testimony at trial. *Marvis v. State*, 36 S.W.3d 878, 881 (Tex. Crim. App. 2001). "The resolution of conflicts in evidence is properly made by the jury." *Id.*

The indictment alleged McGee committed aggravated sexual assault on E.S. by contacting or penetrating E.S.'s anus with his sexual organ, contacting or penetrating her sexual organ with his, and committing oral sex upon her. A person commits aggravated sexual assault if, without the other person's consent, he intentionally and knowingly causes the penetration of the anus or sexual organ of another by any means, or causes the sexual organ of another to contact the actor's mouth, and uses or exhibits a deadly weapon during the same criminal episode. TEX. PEN. CODE ANN. § 22.021 (Vernon 2007). The testimony of an adult victim of aggravated sexual assault is sufficient to support the conviction of the attacker, as long as the victim informed any person other than the defendant of the attack within one year. TEX. CODE CRIM. PROC. ANN. art. 38.07 (Vernon 2007); *see Benton v. State*, 237 S.W.3d 400, 404 (Tex. App.—Waco 2007, no pet.).

McGee argues the evidence is insufficient because he denied committing oral sex, and while admitting to the other sexual acts, contends those acts were consensual. He complains the only evidence of non-consent came from E.S., and physical evidence that would corroborate her

testimony—such as the hunting knife—was never produced to the jury. We find this argument unpersuasive. Many items E.S. testified were used or she saw during the assault were found during a police search of McGee's home shortly after she reported the crimes. E.S. testified McGee tied her mouth with a piece of purple cloth and her hands with a robe tie; both were found in McGee's bedroom. A green pillow E.S. recalled being on the bed during the assault was found. E.S. reported McGee used Vaseline before raping her anally, and the Vaseline was found in the bedroom. The police noted marks on E.S.'s wrists, consistent with her testimony that her hands were bound during the attack. The only item E.S. described that was not recovered was the black-handled hunting knife. Although none of this evidence directly proves lack of consent, a rational jury could infer lack of consent from this evidence and could have found E.S.'s testimony credible.

Reviewing all the evidence presented in the light most favorable to the verdict, we hold a rational trier of fact could have found all of the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319 (1979). We overrule McGee's first issue.

### FACTUAL SUFFICIENCY

In his second issue, McGee challenges the factual sufficiency of the evidence supporting the verdict against him. When considering a factual sufficiency challenge, we look at the evidence in a neutral light and give almost complete deference to the jury's determinations of credibility. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We reverse only if the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust or if the evidence supporting the verdict is outweighed by the great weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

McGee argues his account of the events and the testimony of his witnesses was an effective counter to that of E.S.'s, raising a factual question as to the veracity of her testimony. He contends the jury failed to evaluate E.S.'s testimony in light of McGee's in order to determine who was telling the truth. However, there is nothing in the record to support McGee's theory that the jury did not take his testimony into consideration. We must afford almost total deference to a jury's decision when, as here, it is based largely upon a credibility determination. *See Lancon*, 253 S.W.3d at 705.

The State presented ample evidence consistent with E.S.'s allegations against McGee, including physical evidence taken from the scene of the crime and testimony regarding physical injuries to E.S.'s body. It was within the province of the jury to assess the credibility of each witness and the jury could draw logical inferences from the physical evidence and testimony of other witnesses in making the credibility determination. Considering all of the evidence in a neutral light, while giving due deference to the jury's resolution of conflicting evidence presented to them, the evidence against McGee was not so weak as to render the verdict clearly wrong or manifestly unjust, nor is the evidence supporting the verdict is outweighed by the great weight and preponderance of the evidence. We overrule McGee's second issue.

## CONCLUSION

We hold the evidence is legally and factually sufficient to support the trial court's judgment. Accordingly, the judgment is affirmed.

Steven C. Hilbig, Justice

DO NOT PUBLISH