NO. 07-10-00293-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

NOVEMBER 22, 2011

_____

ELIZABETH RUTH WILL, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE CRIMINAL DISTRICT COURT 2 OF TARRANT COUNTY;

NO. 1199012R; HONORABLE WAYNE F. SALVANT, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant Elizabeth Ruth Will appeals from her jury conviction of the offense of injury to a disabled individual by omission[1] and the resulting sentence of nineteen years of imprisonment. Through one issue, appellant challenges the sufficiency of the evidence supporting her conviction. We will affirm.

---

[1] Tex. Penal Code Ann. § 22.04 (West 2011). This is a first degree felony punishable by imprisonment for life or for any term of not more than 99 years or less than 5 years and a fine not to exceed $10,000. Tex. Penal Code Ann. § 12.32 (West 2011).

Background

Evidence showed that in July 2009, appellant's nineteen-year-old son Terry collapsed on the floor of his family's apartment. Terry weighed between four and five hundred pounds. On July 31, appellant called 9-1-1, reporting that Terry had been on the floor for thirty days. She later told paramedics he had been on the floor for two weeks. Terry was found in layers of maggot-infested feces and his body was in poor condition. He was hospitalized for two weeks, then transferred to a rehabilitation center.

In an interview with police, appellant told officers she was responsible for Terry's care because she was his mother and was in the process of becoming his guardian to handle his Social Security benefits. She stated Terry was not capable of caring for himself and had not been able to do so for the last six months. Terry did not work. Appellant also agreed Terry had not left the family's apartment for the last six months.

Appellant's trial testimony was generally consistent with the statements she made to police. She also stated that after Terry fell, she brought him food, drink, and medications and cleaned him. She told the jury Terry had been on the floor for ten days but she assumed he was crawling to bed at night. She also testified she was too "overrun and overtired" to obtain medical assistance and Terry did not want her to call for help. She denied her initial 9-1-1 report that Terry had been on the floor for thirty days and suggested the 9-1-1 tape had been altered.

Given the choices of finding appellant not guilty, guilty of the indicted offense or guilty of a lesser offense of recklessly causing serious bodily injury to her son by

omission, the jury found appellant guilty of the indicted charge, and sentenced her to nineteen years of imprisonment. This appeal followed.

Analysis

Standard of Review

Appellant couches part of her argument on appeal as a contention evidence was factually insufficient. Under *Brooks v. State,* 323 S.W.3d 893 (Tex.Crim.App. 2010), appellate courts review the sufficiency of the evidence to support a conviction only under the standard set forth in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Too, appellant's argument is founded on the contention the trial court erred by denying her motion for directed verdict. That contention is a challenge to the legal sufficiency of the evidence. *Canales v. State,* 98 S.W.3d 690, 693 (Tex.Crim.App. 2003). For both those reasons, we will review appellant's sufficiency claim under the standard set forth in *Jackson,* 443 U.S. at 319. In assessing the sufficiency of the evidence to support a criminal conviction under the standard set out in *Jackson,* we consider all the evidence in a light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* When conducting such a review, we must recognize the jury's role as the judge of the credibility of witnesses and the weight to be given their testimony. *Dewberry v. State,* 4 S.W.3d 735, 740 (Tex.Crim.App. 1999).

In our review, we consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from the evidence. *Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). Circumstantial evidence alone is sufficient to

3

establish the guilt of the accused, and the standard of review as to the sufficiency of the evidence is the same for both direct and circumstantial evidence cases. *Id.* Each fact need not point directly and independently to the guilt of the accused, so long as the cumulative force of all the evidence, when coupled with reasonable inferences to be drawn from that evidence, is sufficient to support the conviction. *Id.*

Appellant challenges the State's evidence of two elements of the offense, arguing the evidence was insufficient to establish beyond a reasonable doubt that she had assumed cared, custody or control[2] of Terry; and that it was insufficient to show Terry was a disabled individual.[3] She points out he was an adult in July 2009 and she was not his legal guardian. She also characterizes Terry as "self-sufficient," capable of clothing, feeding and protecting himself, and making his own decisions concerning his care. We disagree with appellant's contentions, and find the evidence sufficient.

Application

Under Penal Code § 22.04, a person assumes care, custody or control of another when by act, words, or course of conduct, the person acts so as to cause a reasonable person to conclude that she has accepted responsibility for protection, food, shelter, and medical care for the other person. Tex. Penal Code Ann. § 22.04(d) (West

---

[2] *See* Tex. Penal Code Ann. § 22.04(a) (West 2011) (stating, in pertinent part, a "person commits an offense if he . . . intentionally, knowingly, or recklessly by omission, causes to a . . . disabled individual: (1) serious bodily injury; (2) serious mental deficiency, impairment, or injury; or (3) bodily injury)."

[3] See Tex. Penal Code Ann. § 22.04(b) (West 2011) (stating, in pertinent part, that an omission causing serious bodily injury to a disabled individual is conduct constituting an offense under § 22.04 if: (1) the actor has a legal or statutory duty to act; or (2) the actor has assumed care, custody, or control of a disabled individual).

2011). The statute defines "disabled individual" as "a person older than 14 years of age who by reason of age or physical or mental disease, defect or injury is substantially unable to protect himself from harm or to provide food, shelter, or medical care for himself." Tex. Penal Code Ann. § 22.04(c)(3) (West 2011).

The jury heard evidence from which it rationally could have concluded, beyond a reasonable doubt, that Terry was a disabled individual. There was evidence Terry suffered from a mental defect. A psychologist testified she evaluated Terry and concluded he was mentally retarded with an IQ of fifty-seven. He had significant deficits, present before the age of 18, making it unlikely he would be able to attain employment and take care of his basic needs such as food, clothing, shelter and health care. A guardian was appointed for Terry after he was released from the hospital. His aunt agreed Terry did not appear to have the mentality of a normal nineteen-year-old and did not appear to be able to care for himself. A case worker for Adult Protective Services testified Terry "absolutely could not take care of himself" and she contacted Tarrant County Mental Health and Mental Retardation Services.

Evidence of appellant's own statements supports the jury's finding. She told a police officer she was responsible for Terry and he had not been capable of taking care of himself in the six months prior to July 2009. She also agreed she had been taking care of Terry his entire life.

Moreover, although Terry did not testify at trial and no witness attempted to explain why he did not or could not get up, the jury manifestly could have viewed Terry as disabled by reason of physical disease, defect or injury from his apparent inability to

5

get up from the floor where he lay for many days. Appellant seems to suggest that Terry made a conscious decision to remain on the floor. She argues, "Simply because someone is obese does not make them disabled. Testimony showed that prior to the fall Terry walked and moved around by himself without any assistance." That Terry was able to move about before he collapsed does not show he remained able to do so afterward.

When paramedics responded to appellant's call at the end of July 2009, they noted the stench coming from the apartment was "about the same as a dead body a couple of days old." Terry, weighing over 400 pounds, was lying in "layers of feces" that were infested with maggots and flies, surrounded by garbage and general filth. Blood was pooled in his body from the pull of gravity. Terry had skin tears and bruising with blood and other fluids seeping through his skin. Taken to the hospital, he was diagnosed with cellulitis and sepsis. He had a blood clot in one leg. A treating doctor testified Terry had what appeared to be rodent bite marks on his toes and emergency room staff reported to her they found mice and rat feces between Terry's toes. Terry was anemic and otherwise nutritionally deficient.

The responding paramedic testified Terry was unable to provide his social security number or his phone number, or to say when he had last been seen by a doctor, or if he remembered going to school. Terry did not understand where the paramedics were taking him even though it was explained to him. The treating doctor testified Terry behaved like a second or third grader and deferred to appellant every time doctors asked him a question. Consent for hospital procedures was obtained from appellant.

Appellant testified that before he fell Terry made the decision to postpone seeing a doctor about issues with his leg. She said he continued to refuse medical care even after he fell. She argues also on appeal his enthusiasm for video games and his reading of video game magazines demonstrate his capacity for rational decision-making.

Appellant contrasts the evidence of Terry's condition with that of the victim in *Benton v. State,* 237 S.W.3d 400 (Tex.App.—Waco 2007, pet. ref'd), and concludes the evidence is insufficient to show Terry is disabled. In *Benton,* the victim lived in a group home for disabled individuals because he suffered permanent brain injury from a vehicle accident. *Id.* at 402. The injury caused severe thought process delays rendering the victim unable to live alone, defend himself physically or provide food, care, and shelter for himself. *Id.* Testimony indicated the victim's IQ was 60. *Id.* The court concluded the evidence was sufficient to show the victim was disabled as defined by section 22.04(c)(3). *Id.; citing* Tex. Penal Code Ann. § 22.04(c)(3) (West 2011). We do not disagree with appellant that the disability shown in *Benton* was of a different quality than that shown here. We do disagree, however, that the evidence presented showed only that Terry was a self-sufficient person who was not disabled.

Further, we note that much of the testimony suggesting Terry's self-sufficiency came from appellant. The jury was not required to accept her characterization of his capabilities. Applying the applicable standard of review, we find the evidence sufficient to show Terry was disabled under the statutory definition. *Jackson,* 444 U.S. at 319; *Hooper,* 214 S.W.3d at 13.

7

We also find the evidence permitted the jury to find beyond reasonable doubt that appellant had assumed care, custody or control of Terry. Her acts, words and course of conduct would cause a reasonable person to conclude that she had assumed responsibility for his protection, food, shelter, and medical care. Tex. Penal Code Ann. § 22.04(b)(2), (d) (West 2011).

Terry continued to live with appellant after he became an adult. Appellant's husband and Terry's brother also lived in the apartment. Appellant told officers she was Terry's guardian and she was trying to obtain legal documentation to that effect. She also stated she was responsible for him and Terry had not been capable of taking care of himself in the six months prior to July 2009. She also agreed she had been taking care of Terry his entire life.

At trial, appellant said she had removed Terry from public school after he completed fifth grade and homeschooled him until he was thirteen. She testified he had not left the family's apartment in the six months leading up to his fall. She told the jury Terry was not able to work or obtain medical care. She also stated that after Terry fell on the floor, she "was medicating him. I was helping him. I was nursing him. And I was making sure that his needs were taken care of." She also stated she was cleaning Terry and cleaning his skin wounds and infections. She "brought him food . . . and drink . . . and his medications."

The paramedic testified appellant assisted Terry with "all the answers." The paramedic agreed it appeared appellant had taken charge of Terry's medical treatment.

8

As noted, a treating physician testified appellant gave consent for Terry's medical treatment and Terry deferred to appellant when asked questions.

We conclude from the evidence presented the jury reasonably could have concluded appellant assumed responsibility for protection, food, shelter, and medical care for Terry. Viewing the evidence in the light most favorable to the jury's verdict, we find it sufficient and overrule appellant's sole issue. *Jackson,* 443 U.S. at 319; *Hooper,* 214 S.W.3d at 13.

Although she did not raise the issue in her appellate brief, at oral argument appellant asserted that the evidence was insufficient she caused Terry serious bodily injury by omission. We will address the issue briefly.

In her testimony, the physician who treated Terry while he was hospitalized described more than one condition that might constitute serious bodily injury. Hospital tests revealed Terry had a blot clot in his leg, leading physicians to give him a blood thinner. But his body would not tolerate the thinner so a vascular surgeon installed a filter in the vein to keep the clot from becoming dislodged and traveling to a vital organ. The treating physician testified about the seriousness of blood clots and their potential to cause death. She told the jury that morbid obesity predisposes patients to the formation of clots, and that sedentariness also is a factor. She said, "But in . . . Terry's situation[s], the fact that he was left there for two weeks, supposedly, and also . . . in combination[s] with the morbid obesity, . . . that does put him at risk for the blood clot."

The Penal Code defines causation in terms of a "but for" causal connection. Tex. Penal Code Ann. § 6.04(a) (West 2010) (person is criminally responsible "if the result

would not have occurred but for his conduct"); *Robbins v. State*, 717 S.W.3d 348, 351 (Tex.Crim.App. 1986); *Grotti v. State*, 209 S.W.3d 747, 758 (Tex.App.—Fort Worth 2006), *aff'd* 273 S.W.3d 273 (Tex.Crim.App. 2008). The indictment and charge described appellant's omission as a failure "to obtain or provide reasonable medical care or assistance." The State's burden therefore was to show beyond a reasonable doubt that Terry would not have suffered serious bodily injury but for appellant's failure to give or get help for her son.

We need not decide whether the physician's testimony that Terry's remaining on the floor, together with his obesity, "put him at risk" of developing a clot meets the causation requirement for appellant's conviction,[4] because we find sufficient evidence that another of his conditions constituted serious bodily injury and would not have occurred but for appellant's omission.

"Serious bodily injury" is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Penal Code Ann. § 1.07(a)(46) (West 2011). Here, the evidence supports a conclusion Terry sustained a protracted impairment of the function of his skin.

As noted, at the hospital, Terry was diagnosed with cellulitis, which the physician defined as an infection of "your skin and soft tissue." Based on the indications of

---

[4] See Tex. Penal Code Ann. § 6.04(a) (West 2010) (concerning concurrent causes).

infection, and the presence of other factors, physicians added a diagnosis of sepsis.[5] Referring to the condition of Terry's skin, she said "he was in the poorest condition I have ever seen." She testified the cellulitis affected 70 to 80% of his body. She also said his "skin breakdown was severe from top to bottom." Asked to define "skin breakdown," she said it involves a "skin tear," and added, "Excoriations . . . actually you can see the skin sloughing off. And sometimes you can see . . . the tissue underneath exposed." She said Terry's skin was mottled, also indicating "inflammatory conditions." Photographs were introduced at trial showing the condition of Terry's skin. The paramedic also testified Terry's skin was in poor condition with "lots of skin tears." He observed lividity and blood seeping out of several wounds.

The physician attributed Terry's infection to the entry of bacteria into his body. Referring to Terry's skin, she further noted that "once you lose integrity of your . . . natural barrier . . . you are prone to any kind of bacteria going through there and causing infection."[6] Referring to the effect of the delay in medical attention, she said "if the infection[s] was recognized early, he wouldn't have gone into sepsis." The physician also described the treatment provided for the infection, and identified photographs showing areas of Terry's body that were healing.

Terry had been hospitalized with cellulitis before, in 2006. Appellant was made familiar with the condition from his hospitalization on that occasion. From the evidence,

---

[5] The physician described sepsis as referring to a "disregulation in the body," placing the patient in a "sicker state," potentially leading to systemic response or organ damage.

[6] The paramedic's testimony is pertinent here also. He said, "Urine and fecal matter is full of bacteria and he was laying [sic] in it with open wounds."

11

the jury rationally could have determined that but for her failure to obtain or provide reasonable medical care or assistance for Terry on this occasion, he would not have suffered the serious deterioration and impairment of his skin's function. The evidence she caused him serious bodily injury is sufficient.

Having overruled appellant's challenges to the sufficiency of the evidence supporting her conviction, we affirm the trial court's judgment.


James T. Campbell
Justice


Do not publish.