

# NUMBER 13-22-00215-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**TONY CANO RODRIGUEZ,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

### On appeal from the 148th District Court
### of Nueces County, Texas.

---

## MEMORANDUM OPINION

**Before Justices Tijerina, Silva, and Peña**
**Memorandum Opinion by Justice Tijerina**

A jury convicted appellant Tony Cano Rodriguez of sexual assault, a second-degree felony, and assessed punishment at twelve years' imprisonment. *See* TEX. PENAL CODE ANN. § 22.011(a)(1). By his sole issue, appellant argues the evidence was insufficient to prove "without consent" as alleged in the indictment. We affirm.

## I.    BACKGROUND

Appellant is married to R.C.[1] R.C. and her identical twin sister J.C. were thirty years old at the time of trial on April 25, 2022. Appellant was indicted for sexual assault for "intentionally and knowingly caus[ing] the penetration of the female sexual organ of [J.C.] without [her] consent by finger" that allegedly occurred on November 7, 2019. At his trial, the trial court allowed appellant to represent himself at his request.

## A.    A.C.'s Testimony

R.C. and J.C.'s mother, A.C., testified that R.C. has been married to appellant for about three years while J.C. has been married to her mentally disabled husband for eight years. J.C. and R.C. are "mentally challenged" and receive disability financial assistance. A.C. stated that J.C. does not know how to read, write, or spell, and she knows "for a fact" that J.C.'s education level is that of a kindergarten child. A.C. stated that J.C. has a daughter with her mentally disabled husband. According to A.C., Child Protective Services (CPS) "came into the picture" as soon as J.C.'s daughter was born; so, A.C. raised J.C.'s daughter until the age of four. A.C. alerted CPS that J.C. would "steal" her daughter, take her daughter to friends' houses, and did not allow A.C. to care for her. Therefore, CPS removed J.C.'s daughter from A.C.'s care and placed J.C.'s daughter with A.C.'s sister.[2] A.C. believed that R.C. and J.C. did not know what they were doing when they had sex. A.C. affirmed that J.C. would visit appellant and R.C. at appellant's

---

[1] To protect the identity of the victim of the indictment and the members of her family, we use pseudonyms for their names. *See* TEX. CONST. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

[2] A.C. further testified that J.C.'s daughter was abused by her mentally disabled father.

house when appellant picked her up.

**B.     Detective Rodriguez's Testimony**

Detective Crystal Rodriguez with the Corpus Christi Police Department testified that she reviewed J.C.'s interview that was conducted at the Children's Advocacy Center, regarding J.C.'s allegation that appellant "raped" her. After she reviewed the video, it appeared to Detective Rodriguez that J.C.'s mental capacity was of a young child under the age of eight. Based on Detective Rodriguez's investigation, she believed J.C. did not have the capacity to understand and consent to sexual acts.

Detective Rodriguez's interview with appellant was admitted into evidence. In the interview, appellant admitted to penetrating J.C. with his finger and then a vibrator, but he stated it was consensual.[3] Appellant claimed that J.C. and R.C. approached him while nude. Appellant told Detective Rodriguez that J.C. requested that he perform a sex act with her and made him "pinky swear" about it. Appellant stated this has never happened any other time, and this was a one-time occurrence.[4] Appellant admitted that he performed a "magic trick" for J.C. by rubbing a pack of cigarettes on her butt and then handing her the pack.

**C.     J.C.'s Testimony**

J.C. testified that she does not like to look at appellant because she is scared of him. She claimed he did some "horrible stuff" to her and touched her in a way she did not

---

[3] Appellant specifically asked Detective Rodriguez, "Where do you draw the line as to, when do you have to ask?" He stated that J.C. sat on him and "lap danced" on him and stated he did not have to give her permission to do that.

[4] Appellant told detectives he had erectile dysfunction, so he never penetrated her.

3

like. When the State asked her to elaborate, she stated: "I would ask my sister for—for cigarettes, and he said, 'No, you can't have them.'" The State asked what appellant did with the cigarette pack, and J.C. said, "he put them in my butt" along with other "[l]ittle like objects," which she did not like and made her uncomfortable. She testified that appellant put his fingers inside her "private area," even though she did not want him to do that.

On cross-examination, J.C. testified inconsistently that: (1) she has been married only nine months; (2) she must have been married over eight years because she had an eight-year-old daughter; and (3) she was only married nine months, but she was married nine years. J.C. admitted that appellant would pick her and her husband up and take them to appellant's house.

## D.    R.C.'s Testimony

Appellant asked R.C. if J.C. "voluntarily" undressed herself, and R.C. answered yes. On cross-examination, R.C. admitted that she does not know what "voluntarily" means. The State inquired whether anyone asked either her or J.C. to remove their clothing, and R.C. answered yes—though she "did not remember" who made that request. R.C. also remembered that "someone" told her to "dance sexy," but she "wasn't aware," and R.C. was not "remembering that."

R.C. testified that she walked in on appellant and J.C. "playing" and "taking each others clothes off," but she "did not remember" when that occurred. When the State asked R.C. what "playing" meant, R.C. stated, "Like I guess they were having sex." Yet, in the following sentence, R.C. stated J.C. and appellant had their clothes on. According to R.C., she did not like what appellant was doing with J.C. because husbands should not be

4

doing those things "in front of your [sic] wife."

R.C. was unable to state what the age difference was between her and appellant other than he was "old." On redirect examination, R.C. stated that she was twenty-nine years old when she married appellant, but she is unaware if she has been married "a couple of years" or "months" only being married "too long." When appellant asked R.C. if she ever saw him "put [his] fingers inside your sister's butt?" She responded, "Not really."

The following exchange transpired:

[Appellant]: Okay. Did you ever see me do anything sexual with your sister?

[R.C.]: I don't remember.

[Appellant]: Do you remember if your sister ever told you I did?

[R.C.]: Yes.

[Appellant]: Do you remember what she told you?

[R.C.]: Yes and no.

[Appellant]: Could you tell me what you do remember?

[R.C.]: I remember you giving us them [sic] sodas, like cigarettes and sodas.

[Appellant]: Did she have her clothes on or off when she said I did the magic and pulled cigarettes out of her butt?

. . . .

[R.C.]: No, you said—no, it goes like this, you said, "I can—I can—I can work the magic," and [J.C.] said—[J.C.] said—this is exactly what [J.C.] said, "What kind of magic," . . . . He said, "I can work the magic," and then what he did [sic], and then I was trying to tell him not to do anything that I don't [sic]

5

> approve of, you know, he did—sometimes he wouldn't listen [sic] me.

[Appellant]: Do you remember while you[-]all were dancing if you got in the bed with me behind me?

[R.C.]: Yes, I remember.

[Appellant]: Do you remember if your sister got in the bed after that?

[R.C.]: Yes.

[Appellant]: Do you remember her getting on top of me while I was laying down?

[R.C.]: Yes.

[Appellant]: What else did you see your sister do after that?

[R.C.]: I seen [sic] her talking to—they were talking— (Unintelligible.)

. . . .

[Appellant]: Was she smiling?

[R.C.]: Yes.

[Appellant]: Do you believe —were you afraid of me at the time?

[R.C.]: I'm not—well, I don't know about that.

[Appellant]: Have you ever been afraid of me?

[R.C.]: No. At first no.

Thereafter, R.C. stated that she was tired of testifying.

The jury convicted appellant and sentenced him to twelve years' imprisonment.

This appeal followed.

6

## II.     STANDARD OF REVIEW

In a sufficiency review, we view all the evidence in the light most favorable to the prosecution and determine whether any rational jury "could have found the essential elements of the crime beyond a reasonable doubt." *Lang v. State*, 561 S.W.3d 174, 179 (Tex. Crim. App. 2018). The jury is the lone arbiter of the weight of the evidence and witness credibility. *Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016). We defer to the jury's resolution of evidentiary conflicts and the inferences drawn from the evidence as long as the inferences are reasonable ones supported by the evidence rather than mere speculation. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). "Direct and circumstantial evidence are equally probative," and the latter alone can suffice to prove guilt. *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018).

## III.     APPLICABLE LAW

A person commits sexual assault if he intentionally and knowingly "causes the penetration of the anus or sexual organ of another person by any means, without that person's consent." TEX. PENAL CODE ANN. § 22.011(a)(1)(A). "Without consent" includes situations where "the actor knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or of resisting it." *Hopkins v. State*, 615 S.W.3d 530, 539 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (citing TEX. PENAL CODE ANN. § 22.011(b)(4)). "In a prosecution alleging lack of consent due to mental disease or defect, 'the victim's testimony concerning actual consent or lack of actual consent is immaterial.'" *Id.* at 542 (citing *Rider v. State*, 735 S.W.2d 291, 293 (Tex. App.—Dallas 1987, no pet.)); *Wootton v. State*, 799

7

S.W.2d 499, 501–02 (Tex. App.—Corpus Christi–Edinburg 1990, pet. ref'd) (emphasizing that consent depends on the victim's "ability to appraise the nature of the sexual act or the ability to resist it"). This is because "[t]he issue is the victim's capacity to consent" as the purpose of § 22.011(b) "is to protect those whom the law deems incapable of consent." *Hopkins*, 615 S.W.3d at 543 (citing *Rider*, 735 S.W.2d at 293); *see also Rodriguez v. State*, No. 14-06-00108-CR, 2007 WL 1892302, at *4 (Tex. App.—Houston [14th Dist.] July 3, 2007, no pet.) (mem. op., not designated for publication). It follows that "[a] person who is incapable of giving consent" in this regard "is likewise incapable of withholding it." *Hopkins*, 615 S.W.3d at 543.

## IV. DISCUSSION

Appellant concedes that there was sufficient evidence that he penetrated J.C. By his first issue, appellant contends that the evidence is insufficient to support the jury's verdict to prove "without consent" beyond a reasonable doubt. Appellant argues there was no evidence from which a jury could rationally conclude beyond a reasonable doubt that J.C. was unable to understand the nature of the event or resist it due to mental defect or disease and appellant knew it. *See* TEX. PENAL CODE ANN. § 22.011(b)(3). Specifically, appellant claims, "the State showed only that an adult female of diminished mental faculties didn't like the conduct, but it failed to show that she didn't understand what it was—which was her sister's husband putting his fingers in her private parts—something she consistently maintained she understood but didn't like."

### A. J.C. was "incapable either of appraising the nature of the act or of resisting it"

It is undisputed that J.C. cannot read, write, spell, or drive, that CPS removed her

8

daughter from her care because she is incapable of raising a child, and that she has a diminished education level—between kindergarten and third grade.[5] *See Benton v. State*, 237 S.W.3d 400, 401–03 (Tex. App.—Waco 2007, pet. ref'd) (holding the evidence, including the parents' testimony that the teenage victim could not care or provide for himself, was sufficient to prove the victim was a disabled individual). It is undisputed that J.C. and R.C. suffer from the same mental defect, are disabled, and receive a disability check. *See id.* A.C. administers J.C.'s medication daily and accompanies her to all her doctor's appointments because J.C. is unable to do it on her own. *See id.* Additionally, J.C. has never lived alone because she is incapable of caring for herself. *See id.*

A.C. and Detective Rodriguez further stated that J.C. did not have the cognitive ability to understand sexual acts, and there was evidence that J.C. was afraid of appellant. *See Rider*, 735 S.W.2d at 293; *see also Green v. State*, No. 14-06-00535-CR, 2007 WL 2265787, at *2 (Tex. App.—Houston [14th Dist.] Aug. 9, 2007, no pet.) (mem. op., not designated for publication) ("Evidence that a complainant cannot understand the consequences of the sexual act is probative of whether the complainant could appraise the 'nature' of the act."). J.C. stated she did not remember eating at restaurants with appellant, walking to her mother's house from appellant's house, and does not know the distance between her mother's house and appellant's. J.C. experienced difficulty understanding some of the questions asked and would provide nonresponsive answers. *See Rider*, 735 S.W.2d at 291 (concluding that testimony that the victim required constant supervision, low-functioning IQ, inability to drive a car, special education in school, and

---

[5] J.C. testified that she could count "up to 100."

the officer's observation that she "did not seem quite right" was sufficient to support jury's finding of mental disease or defect under § 22.011(b)(4)); *see also Green*, 2007 WL 2265787, at *2 (holding that the mere fact that a person understands something about sex is not necessarily enough to show he is capable of appraising its nature).

R.C. and appellant gave detailed accounts of the encounter. *See Hopkins*, 615 S.W.3d at 541. The jury saw, heard, and evaluated firsthand J.C.'s and R.C.'s demeanor, manner of speech, and testimony, which allowed the jury to personally assess J.C.'s mental disabilities and her ability to appraise the nature of the sexual act in particular. *See Temple v. State*, 390 S.W.3d 341, 363 (Tex. Crim. App. 2013); *Meuret v. State*, 500 S.W.3d 539, 550–51 (Tex. App.—San Antonio 2016, no pet.) ("[T]he jury was able to personally assess A.T.'s mental disabilities, her manner of speech, her demeanor, and her testimony regarding her ability to appraise the sexual act."); *see also Garza v. State*, No. 13-09-00549-CR, 2012 WL 914996, at *16 (Tex. App.—Corpus Christi–Edinburg Mar. 15, 2012, no pet.) (mem. op., not designated for publication) (concluding a rational trier of fact could have found beyond a reasonable doubt that a mental disease or defect made the victim incapable of appraising the nature of the act or resisting it). The jury was not obliged to accept J.C.'s general awareness of the sexual act as proof that she could appraise the nature of appellant's action. *See Balderas*, 517 S.W.3d at 766 ("We will not second-guess the jury's assessment of the credibility and weight of witness testimony," and "we defer to the jury's resolution of conflicting inferences."). The jury was in a much better position to determine whether J.C. was capable of appraising the nature of the act or of resisting it than is this Court, and the jury's finding will not be disturbed where it is

10

supported by the record. *See Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000) (providing that the jury is the sole judge of the weight and credibility of the witnesses' testimony); *see also Williams v. State*, No. 05-12-00930-CR, 2014 WL 1010074, at *3–4 (Tex. App.—Dallas Feb. 14, 2014, pet. ref'd) (mem. op., not designated for publication).

After reviewing the evidence in light most favorable to the verdict, we conclude that the evidence was sufficient to support the jury's conclusion that consent was lacking because J.C. suffered from a mental disease or defect that made her incapable of appraising nature of the act or resisting it as described in § 22.011(b)(4). *See* TEX. PENAL CODE ANN. §22.011(b)(4); *Hopkins*, 615 S.W.3d at 542; *Graves v. State*, 307 S.W.3d 483, 496–97 (Tex. App.—Texarkana 2010, pet. ref'd) (finding that evidence of disabled-individual status sufficient despite proof that intellectually disabled victim was married, had children, and had been convicted of organized criminal activity).

## B.      Appellant's knowledge of J.C.'s mental disease or defect

Appellant further argues that the evidence is insufficient to prove that he knew J.C. was incapable of resisting him due to mental disease or defect because J.C. was married, had been married for nine years, "had an 8[-]year[-]old daughter at the time of the trial," and J.C. and her husband "stayed weekends" in appellant's house on air mattresses he provided for them.

In this case, there was evidence that J.C. had been to appellant's house on numerous occasions, interacted with appellant often, and even spent entire weekends there. In fact, R.C. testified that she told J.C. "not to go through [appellant's] house when [R.C. was] not there because [she] can't see where—[she] don't [sic] know if [J.C.'s]

getting hurt or not, you know." Furthermore, appellant was aware that J.C. is not her daughter's caregiver, and CPS removed J.C.'s daughter from J.C.'s care at birth.

Appellant admitted that he performed "magic" on J.C. with some cigarettes, and J.C. made him "pinky swear" to certain things, which undermines appellant's position that he was unaware she lacked the capacity to appraise the nature of the sexual act or resisting. Additionally, appellant admitted into evidence a video he took of J.C. on his cell phone. In the video, appellant states he is waiting for the police to arrive because he is accusing J.C. of stealing R.C.'s purse while J.C. is pacing back and forth and frantically yelling belligerently at appellant. After viewing the video, the jury was able to assess J.C.'s interaction, behavior, and her ability or inability to coherently communicate with appellant as her speech was not as uniformly mature as appellant suggests. *See Temple*, 390 S.W.3d at 363 (holding that the evaluation of a witness's demeanor is for the jury). Furthermore, "circumstances like familiarity with the victim or readily perceptible intellectual shortcomings support a finding of knowledge." *Hopkins*, 615 S.W.3d at 543; *Sanchez v. State*, 479 S.W.2d 933, 941 (Tex. Crim. App. 1972) (holding that evidence that defendant had known victim for some time combined with testimony of other witnesses that victim's deficiency was obvious held sufficient to show defendant knew of victim's mental defect). Viewing all the evidence in the light most favorable to the verdict, we hold the evidence is sufficient to prove that appellant knew J.C. had a mental disease or defect that made her incapable of appraising the nature of the sexual act or resisting it. *See Hopkins*, 615 S.W.3d at 551 (stating that sex is deemed "nonconsensual based on the victim's inability to understand the nature of the act or decline participation and the

12

defendant's awareness of the victim's inability to do so"). We overrule appellant's sole issue.

## V. CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
1st day of June, 2023.

13