**AFFIRMED as Modified; Opinion Filed February 12, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01632-CR

**LORVIN RODRIGUEZ ZAMBRANO, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 363rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F11-58067-W**

## OPINION

Before Justices O'Neill, Myers, and Brown
Opinion by Justice Myers

A jury convicted appellant Lorvin Rodriguez Zambrano of aggravated sexual assault of a child under the age of fourteen, and the trial court sentenced him to seventy-five years in prison. In three issues, he contends the trial court erred when it allowed the admission of appellant's transcribed audio statement, the evidence is insufficient to support the conviction, and that the sentence violated the United States and Texas constitutions. In a cross-point, the State argues the judgment should be modified. As modified, we affirm the trial court's judgment.

### BACKGROUND AND PROCEDURAL HISTORY

The complainant, F.G., seventeen years old at the time of trial, testified that she was born in Honduras on February 26, 1995. F.G. first met appellant when she lived in Honduras—she described him as "like a family friend." F.G. moved to Lancaster, Texas from Honduras around the year 2003, when she was eight years old. Her family, including her mother, father, and two

sisters, were already living there when F.G. moved to the United States. The family later moved to an apartment at 4901 Rolling Meadows in Dallas, Texas.

Appellant moved to the Dallas area from Honduras a few years after F.G.'s family. F.G. occasionally saw appellant, who worked with F.G.'s father, at gatherings of friends and family but did not speak to him very often. In 2008, appellant and F.G. started talking on the phone to each other following a New Year's party the previous year. They spoke on the phone and texted each other quite often, and began dating in June of 2008, when F.G. was thirteen years old and in the eighth grade. Appellant was twenty-eight. According to F.G., she told appellant her age.

They kissed for the first time the morning after appellant returned from working out of state. Appellant initiated the kiss, according to F.G.'s testimony. By November or December of 2008, their relationship escalated to the point where F.G. skipped school to stay home with appellant. On that occasion, they had sex in F.G.'s bedroom. F.G. testified that appellant pushed her shorts to one side and placed his penis in her vagina; he did not ejaculate.

F.G. estimated that she and appellant had sex "[p]robably like two or three times a month" during their approximately two-year-and-ten-month relationship, either at her parent's residence or appellant's apartment, and that they may have had sex over twenty times. But F.G. could not recall any other specific dates or times they had sex between November of 2008 and her fourteenth birthday in February of 2009.

Appellant and F.G. tried to keep their relationship secret. In January of 2009, however, F.G.'s mother saw text messages indicating that F.G. had been talking to appellant. Her parents had appellant come over to talk to them, but F.G. and appellant "denied everything." After that, they continued to talk to and see each other in secret. Meanwhile, F.G. was skipping school to see appellant. Later that year, after F.G.'s father examined F.G's phone and discovered that she was still contacting appellant, he called appellant and went to his apartment and confronted him.

–2–

F.G.'s parents asked her to stop talking to appellant "because he was too old and all that."  She "pretended that we weren't talking anymore," but F.G. and appellant continued seeing each other in secret and having sexual intercourse.  Although F.G.'s parents took away her phone on those occasions when they caught her contacting appellant, she continued communicating with him by other means—using her residential telephone, friends' phones, and a phone that appellant had given her.

F.G. tried to end the relationship because appellant "was becoming obsessive with me," "questioning me about everything," and threatening to hurt himself or come over to her residence and tell her parents about their relationship.  F.G. testified that she went "back to him so he would just be quiet about it and leave me alone, because he wouldn't leave me alone, even if I asked."  Appellant would occasionally call F.G.'s residential telephone number and "stay quiet on the phone and stuff" when someone answered.  F.G.'s parents would ask her if she knew who was calling, but she would "always tell them no."

F.G. tried to break up with appellant several times before the relationship ended.  When F.G. attempted to break up with appellant, they would talk on the phone at night and appellant would tell F.G. "that he wanted to see me for the last time."  Appellant took F.G. to a motel and attempted to have sex with her, but she refused, after which appellant tried to force himself on her.  F.G. then "struggled trying to get him off me for like five minutes or ten."  F.G. was able to get away from appellant, and he apologized.  She asked him to take her back to school, but he refused and she stayed with him for the rest of the day.  Approximately two to three weeks later, appellant picked F.G. up from school and they went back to the motel.  Appellant again tried to talk F.G. into resuming their relationship.  Although she refused, F.G. had sex with appellant.  Before their relationship ended, F.G. also tried to return to appellant the phone he had given her, but he would not accept it.  F.G. testified that she and appellant had sex for the final time

approximately two to four weeks later. By the time her relationship with appellant ended, in March of 2011, F.G. was in the tenth grade.

F.G. testified that she decided to tell her parents about her relationship with appellant because, in part, she grew tired to the calls and text messages she was receiving from him. F.G. told her parents that appellant was "the person that was calling them," and that she and appellant "kept on dating after that." She initially denied they were having sex, but eventually admitted it. When she told her parents that she and appellant were having sex, "they were both really upset." Her parents called the police.

The police came to F.G.'s residence that night and spoke to her about her relationship with appellant. She admitted in her trial testimony that, during that first interview with the police, she did not tell them "everything." She later spoke to Detective Clark[1] with the Child Exploitation Unit of the Dallas Police Department—the lead detective on this case—and provided a written statement detailing what had happened. At that detective's direction, F.G. called appellant in an attempt to get him to admit that the two of them had had sexual intercourse. During the phone call, appellant admitted having a relationship with F.G. but did not "directly" admit to having sex with her.

Detective Denise Rodriguez, an investigator with the Dallas Police Department's Child Exploitation Unit, testified that she was brought into the investigation to assist Clark because he did not speak Spanish. The interview with appellant took place on July 24, 2011. Rodriguez interviewed appellant in Spanish, and the interview was both audio and video-recorded. After reading appellant his *Miranda* rights and confirming, orally and in writing, that appellant understood those rights, Rodriguez discussed the case with appellant. According to Rodriguez, appellant told her that F.G. had been his girlfriend for three years, that they started dating on

---

[1] The record does not reveal Clark's full name.

March 28, 2008, that their relationship lasted approximately three years, and that they broke up "in about" January of 2011 "because [F.G.] wanted to." Appellant also told Rodriguez that he was twenty-eight years old and F.G. was thirteen when they first started dating, and that he was aware of F.G's age and knew it was against the law for him to have sex with someone that age.[2] Appellant stated that the relationship "became sexual" approximately six to seven months after they started dating, and that he had sex with F.G. "approximately 30 to 40 times within that three-year period" at the apartment where F.G. previously lived, appellant's apartment, and F.G.'s parents' residence. Appellant told Rodriguez that F.G. "skipped school approximately 10 to 15 times to be with him and have sex." At the end of the interview, appellant declined to make a written statement, and was allowed to leave.[3]

The State also offered the testimony of two experts: Wynn Shaw, a clinical supervisor at the Dallas Children's Advocacy Center; and Dr. Kathleen Lang, a medical doctor at the REACH clinic—the Referral and Evaluation of At-Risk Children. Shaw testified regarding the ways in which a person can win the trust of a child, and how perpetrators will manipulate a child. Lang, who did not examine F.G. or review her medical records, testified that, in about ninety-five percent of their cases the child would "have what we call a normal exam, and that's where we look at the child and we do a very good external genital exam, and everything looks normal."

---

[2] The relevant portion of the reporter's record reads as follows:

Q. [PROSECUTOR:] Did he indicate to you when the relationship began as far as how old he was and how old she was at the time?

A. [RODRIGUEZ:] Yes. He stated that [F.G.] was 13 and that he was 28.

Q. So he was aware of how old she was at that time?

A. Yes.

Q. As far as him knowing that it was against the law for him to speak to someone or to date someone or have sex with someone that age, did he understand that that was also against the law?

A. Yes.

[3] Appellant was not placed under arrest at that time, according to Rodriguez, because she wanted to update the lead detective, Detective Clark, about the interview. Clark was responsible for filing the case against appellant.

Lang added that "[t]he further you get from the event, the likelihood of finding anything goes significantly down." She referred to studies concerning "children who have reported repetitive penetrating events that still have normal exams." Lang testified that, if ejaculation occurred, the first seventy-two hours would usually be when an examination might find semen for DNA analysis.

The first witness called by the defense was Vanessa Mendez, F.G's friend, who testified that she first met F.G. in the fifth grade and that they lived together for approximately one year. Mendez testified that she was sixteen years of age and in the ninth grade, and F.G. was approximately fourteen and in the eighth grade, when they lived together in 2009. But she was not living with F.G. or F.G.'s family in 2008.

Appellant testified that he knew F.G. and her family because they lived in the same neighborhood in Honduras. He said that after moving to the United States in 2006 or 2007, he lived with one of F.G.'s uncles, and became reacquainted with F.G. at a party. He testified that his relationship with F.G. began after she turned fourteen on February 26, 2009, and that their sexual relationship began in October or November of 2009, by which point F.G. would have been at least fourteen-and-a-half years old. He testified that he tried "[m]any times" to "cut off the relationship" with F.G. and "would tell her to look for a young man her age," and that he was "just now finding out the problems and consequences a person could have" from having a relationship with a fourteen-year-old. When asked if he had a romantic or "love" interest in F.G., appellant replied, "Well, yes. At the end that's how everything was." On cross-examination, he insisted that F.G. was already fourteen years old when they began having sexual intercourse. The prosecutor also asked appellant, who testified that he had a thirteen-year-old daughter and ten-year-old son in Honduras, how he would feel if his thirteen-year-old daughter

had sex with a thirty-year-old man. Appellant replied: "If my daughter loves him, what can I do. But if she's confused at that moment, what can I do?"

After both sides rested, the State abandoned the continuous sexual abuse language in the indictment and proceeded to the jury on aggravated sexual assault of a child. The jury found appellant guilty of aggravated sexual assault of a child.

During the punishment hearing held before the trial court, the State resubmitted its case-in-chief and rested. Two witnesses testified for the defense. Appellant's brother, Elgon Giovanni Zambrano, testified that appellant was a good person, that he worked hard to help support their family, and that he tried to end the relationship with F.G. He added: "There was almost a year that he went to Houston to work for the same reason, but she would also just keep on insisting." Astrid Cruz-Perez, appellant's distant cousin, blamed F.G. for what happened to appellant. She testified that F.G. "seduced" her cousin "until she got what she wanted," that appellant "ended up being the victim because there were so many occasions that he tried not to even talk to her," and that F.G. has the "mind of an older person." She also testified that appellant was "a good guy" who had "never done anything wrong" and that F.G., far from being the victim, was to blame for what happened. Astrid admitted she had never met or talked to F.G. or F.G.'s parents, and that her testimony regarding F.G. was based on things she had been told by other people. Following the conclusion of the evidence and arguments by counsel, the trial court sentenced appellant to seventy-five years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice.

## DISCUSSION

### *Transcript of Audio Statement*

In his first issue, appellant argues that the trial court erred by allowing the admission of appellant's transcribed audio statement because the statement was not properly authenticated.

The State argues appellant did not preserve this issue for appellate review and that, alternatively, the trial court did not abuse its discretion.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). As long as the trial court's ruling is "within the zone of reasonable disagreement," we will not disturb the ruling. *Id*. (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)).

Only relevant evidence is admissible. TEX. R. EVID. 401, 402. Evidence has no relevance if it is not authentically what the proponent claims it to be. *Tienda*, 358 S.W.3d at 638. "Through authentication, the proponent of an exhibit proves that the exhibit is what its proponent claims." *McLeod v. State*, 56 S.W.3d 704, 709 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (citing TEX. R. EVID. 901(a)). Rule 901(a) defines authentication as a "condition precedent" to admissibility of evidence that requires the proponent to make a threshold showing that would be "sufficient to support a finding that the matter in question is what its proponent claims." *See* TEX. R. EVID. 901(a). Rule 901(b)(1) provides that authentication may be accomplished by testimony from a witness with knowledge that the "matter is what it is claimed to be." *Id*. at 901(b)(1). The rules of evidence also provide that extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to certain categories of documents. *See id*. 902. For example, a document that is "accompanied by a certificate of acknowledgment executed in the manner provided by law by a notary public or other officer authorized by law to take acknowledgments" is self-authenticating. *Id*. at 902(8).

During the trial, after Detective Rodriguez testified about the July 2011 interview and appellant's statements, the State offered as evidence State's Exhibit 4, "a certified copy of the transcription of [appellant's] interview that was conducted by Detective Rodriguez." Defense counsel questioned Rodriguez on voir dire about her familiarity with the transcript:

Q. [DEFENSE COUNSEL:] Detective Rodriguez, in a prior hearing, when I was asking you about portions of the transcript, you indicated that you had not actually compared portions of the transcript with the actual recording to see if they're accurate; is that right?

A. [RODRIGUEZ:] That's right.

Q. So without having reviewed and compared this translation to the original recording, you really can't vouch for the complete accuracy of the document; is that right?

A. No. I do remember parts of the interview that—I have reviewed the video previously so I do remember it.

Q. So part of it may be correct?

A. Yes.

Q. But we're not sure about all of it.

At this point defense counsel stated, "Judge, I would object," to which the State responded, "It's a certified copy, Your Honor." The trial court overruled the defense's objection and admitted the exhibit, noting counsel's exception to the court's ruling.

Assuming, without deciding, that appellant preserved error, the certified and notarized translation introduced by the State was a self-authenticating document, which did not require extrinsic evidence of authenticity as a condition precedent to its admissibility. *See* TEX. R. EVID. 902(8). The document contained the signature of Emilia Le Gallo, who certified "that to the best of my knowledge and belief the foregoing is a true and correct rendition into English of the original document in Spanish," and that the translator was "proficient in the languages." The document also had the following certificate of acknowledgment executed by Rosa Hernandez, a notary public:

> Before me, the undersigned, a Notary Public, on this day personally appeared, Emilia Le Gallo, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Accordingly, Rodriguez was not required to testify as to the accuracy of the translation to authenticate the transcript under rule 901 because the exhibit contained a certificate of acknowledgment executed by a notary public, thus making it self-authenticating under rule 902(8). The trial court, then, did not abuse its discretion by admitting the transcript. Appellant's first issue is overruled.

### *Sufficiency of the Evidence*

In his second issue, appellant contends the evidence is insufficient to support the conviction because there is insufficient evidence showing he had sex with a child under the age of fourteen.

In reviewing a challenge to the sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lucio v. State*, 351 S.W.3d 878, 894–95 (Tex. Crim. App. 2011); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). We must defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Jackson*, 443 U.S. at 326.

The indictment charged appellant with continuous sexual abuse of a young child, alleging that on or about November 1, 2008, he did:

> Then and there, intentionally and knowingly, during a period that was 30 or more days in duration, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against [F.G.], a child younger than 14 years of age, hereinafter called complainant, namely by contact and penetration of the female sexual organ by defendant's sexual organ.

To obtain a conviction for this offense, the State needed to prove beyond a reasonable doubt that, "during a period that is 30 or more days in duration," appellant committed "two or more acts of sexual abuse" and that, at the time of the commission of each of the acts of sexual abuse, he was

–10–

seventeen years of age or older and F.G. was a child younger than fourteen years of age. *See* TEX. PENAL CODE ANN. § 21.02(b)(1), (2).

Just before the close of evidence, the State abandoned the allegation of continuous sexual abuse and proceeded on the lesser-included offense of aggravated sexual assault of a child. *See Soliz v. State*, 353 S.W.3d 850, 854 (Tex. Crim. App. 2011) ("To the extent that a continuous-sexual-abuse indictment alleges certain specific offenses, an 'offense listed under Subsection (c)' [of penal code section 21.02, which defines what constitutes an "act of sexual abuse"] will *always* meet the first step of" a lesser-included offense analysis (emphasis in original)). A person commits the offense of aggravated sexual assault, in relevant part, if he intentionally or knowingly "causes the penetration of the anus or sexual organ of a child by any means" and "the victim is younger than 14 years of age." TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (2)(B). The testimony of a child sexual abuse victim alone is sufficient to support a conviction for aggravated sexual assault. TEX. CODE CRIM. PROC. ANN. art. 38.07(b)(1) (requirement that victim inform another person of the alleged offense within one year does not apply if at the time of the alleged offense victim was seventeen years of age or younger); *Bargas v. State*, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Benton v. State*, 237 S.W.3d 400, 404 (Tex. App.—Waco 2007, pet. ref'd); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd). Appellant does not challenge the evidence that he intentionally or knowingly penetrated F.G.'s sexual organ with his sexual organ, but he argues the evidence is insufficient to prove beyond a reasonable doubt he had sex with a child younger than fourteen years of age.

Appellant argues that F.G. was an unreliable and deceptive witness, asserting "there was no feasible way that the jury could have concluded, beyond a reasonable doubt," that she was less than fourteen years of age at the time he had sex with her. However, F.G. testified that she

was thirteen years old when appellant first inserted his penis into her vagina in late 2008. The State was not required to introduce any medical reports or other physical evidence to corroborate the child victim's testimony. *Hiatt v. State*, 319 S.W.3d 115, 121 (Tex. App.—San Antonio 2010, pet. ref'd); *Benton*, 237 S.W.3d at 404. F.G.'s uncorroborated testimony alone is sufficient to support appellant's conviction for aggravated sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07; *Bargas*, 252 S.W.3d at 888; *Tear*, 74 S.W.3d at 560.[4]

Appellant also argues that other evidence showed he began having sex with F.G. in 2009, when she was fourteen years old. He alleges that the testimony of Villeva Garcia, F.G.'s mother, shows F.G. must have been fourteen years old because Villeva testified that Vanessa, F.G.'s friend, was sixteen years old when she moved in, and the two girls were approximately two years apart in age. Villeva's testimony, however, was unclear as to the dates Vanessa lived with them, and her only testimony regarding the ages of the two girls was that they were "[a]bout two years apart," and that Vanessa was "[l]ike 16." Furthermore, F.G. testified that she started having sex with appellant around November of 2008, when she was thirteen years old, which was prior to the time Vanessa moved into F.G.'s parents' residence in 2009. And while Vanessa testified that she thought F.G. was approximately fourteen years of age when Vanessa moved in with F.G.'s family, Vanessa stated that she did not live with F.G. in 2008. In addition, although appellant testified that F.G. was fourteen years old when he began having sex with her, F.G. testified that she and appellant had sex in late 2008, when she was thirteen years of age, and Detective Rodriguez testified that appellant admitted he was twenty-eight years old and F.G. was thirteen years of age when they first started dating. Rodriguez testified regarding appellant's statements

---

[4] We also note that, contrary to the statement in appellant's brief, F.G. did not testify that her written statement to the police indicated "she had sex with [a]ppellant sometime in November or December 2009." Indeed, the part of the reporter's record cited by appellant shows that defense counsel asked F.G., "And in your written statement you say that it was sometime in November or December 2008 that you first had sexual intercourse; is that right." She answered, "Yes."

and the State offered a certified copy of the transcription of the interview conducted by Rodriguez, which was admitted over appellant's objection.

As the exclusive judge of the weight and credibility of the evidence, the jury was free to believe F.G.'s testimony that appellant began having sex with her when she was younger than fourteen years of age. The jury was likewise free to reject appellant's testimony that F.G. was fourteen years old when they began having sex. *See, e.g., Bustamante v. State*, 106 S.W.3d 738, 741 (Tex. Crim. App. 2003). Based on the evidence presented, including the testimony of F.G. and Detective Rodriguez, we conclude the evidence is sufficient to support the conviction. We overrule appellant's second issue.

### *Disproportionality of Appellant's Sentence*

In his third and fourth issues, appellant contends the seventy-five-year prison sentence is grossly disproportionate to the crime and inappropriate to the offender, in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Section 13 of the Texas Constitution. *See* U.S. CONST. amend. VIII, XIV; TEX. CONST. art. I, § 13.

Appellant's trial counsel did not object at the time of pronouncement that the sentence was disproportionate, nor did he move for a new trial based on that ground.[5] To preserve his complaint that the sentence was disproportionate to the crime committed, appellant must have specifically objected on that basis at the time the sentence was pronounced or raised the issue in a post-trial motion. *See* TEX. R. APP. P. 33.1(a)(1); *Jacoby v. State*, 227 S.W.3d 128, 130 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *Castaneda v. State*, 135 S.W.3d 719, 723 (Tex. App.—Dallas 2003, no pet.). Because he did not object when the sentence was pronounced or raise the issue in a motion for new trial, appellant has not preserved his complaints for appellate review. *See Jacoby*, 227 S.W.3d at 130; *Castaneda*, 135 S.W.3d at 723.

---

[5] Appellant filed a motion for new trial, but the only issue asserted was that the verdict was contrary to the law and the evidence.

–13–

Nevertheless, we note that a punishment assessed within the statutory range for an offense is neither excessive nor unconstitutionally cruel or unusual. *Kirk v. State*, 949 S.W.2d 769, 772 (Tex. App.—Dallas 1997, pet. ref'd); *see also Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984). Aggravated sexual assault of a child is a first-degree felony, carrying a punishment range of five to ninety-nine years or life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. TEX. PENAL CODE ANN. § 12.32(a); *see also* TEX. PENAL CODE ANN. § 22.021(e). The evidence showed that appellant had sex with a thirteen-year-old child. In pronouncing sentence, the trial court stated that appellant's crime was a "despicable one," that appellant had not expressed any shame or remorse for his crime, that the "flagrant perjury" in appellant's testimony compounded appellant's guilt, and that appellant was a "danger to others." Appellant's seventy-five year sentence is within the statutory range. Given the nature of the offense and the available punishment range, the record does not support appellant's contention that his sentence was grossly disproportionate to the offense. Moreover, there is no evidence in this record comparing the sentence imposed here with punishments assessed for the same offense against other defendants in this or other jurisdictions. *See Davis v. State*, 125 S.W.3d 734, 736 (Tex. App.—Texarkana 2003, no pet.); *Fluellen v. State*, 71 S.W.3d 870, 873 (Tex. App.—Texarkana 2002, pet. ref'd). Appellant also does not cite any cases showing the punishments assessed for the same or similar offenses in this jurisdiction or other jurisdictions. As a result, even if we were to overlook the fact that appellant's contention was not preserved for appellate review, he failed to show that the sentence was grossly disproportionate to the offense. *See Fluellen*, 71 S.W.3d at 873. We overrule appellant's third and fourth issues.

## *Modification of Judgment*

In a cross-point, the State argues that the judgment should be modified to correct errors. The State first points out that the judgment bears the heading "JUDGMENT OF CONVICTION BY COURT—WAIVER OF JURY TRIAL." Appellant, however, did not waive his right to a jury trial. The judgment will therefore be modified to reflect that a jury convicted appellant and that, pursuant to appellant's pretrial election, the trial court assessed appellant's punishment.

The judgment also states that the offense for which appellant was convicted was "SEX ABUSE CONTINUOUS CHILD/14," and that the statute for the offense was "21.02 Penal Code." The record, however, shows that the State abandoned the allegation of continuous sexual abuse of a child during trial and proceeded on the offense of aggravated sexual assault of a child. The theory of continuous sexual abuse under section 21.02 was not submitted to the jury. The jury returned a verdict finding appellant "guilty of aggravated sexual assault of a child, as included in the indictment." Hence, the judgment will be modified to reflect appellant's conviction for aggravated sexual assault of a child younger than fourteen years of age under section 22.021 of the penal code.

Additionally, the judgment states that appellant pleaded guilty to the charge and, under the heading, "Terms of Plea Bargain," further states, "75 YEARS TDC; NO FINE." But the record shows that appellant entered a plea of not guilty and that he contested his guilt during trial. The judgment will, thus, be modified to omit the reference to a plea agreement and show appellant's plea of not guilty.

The judgment also incorrectly states that the "Sex Offender Registration Requirements do not apply to the Defendant," and states "N/A" for the age of the victim at the time of the offense. Appellant's conviction for aggravated sexual assault of a child subjects him to the sex offender registration requirements in chapter 62 of the Texas Code of Criminal Procedure. *See* TEX.

–15–

CODE CRIM. PROC. ANN. art. 62.001(5)(A). Accordingly, the judgment will be modified to show that the sex offender registration requirements apply and that the age of the victim at the time of the offense was thirteen. *See Jackson v. State*, Nos. 05–12–00041, 00042, & 00043–CR, 2012 WL 5359513, at \*2 (Tex. App.—Dallas Oct. 31, 2012, no pet.) (mem. op., not designated for publication) (modifying judgments to show applicability of the sex offender registration requirements and age of the victim); *Medlock v. State*, No. 05–11–00668–CR, 2012 WL 4125922, \*1–2 (Tex. App.—Dallas Sept. 20, 2012, no pet.) (mem. op., not designated for publication) (same).

To summarize, we sustain the State's cross-point and modify the judgment to show that (1) appellant was convicted by a jury; (2) he was convicted of aggravated sexual assault of a child younger than fourteen years of age; (3) the applicable statute for the offense is section 22.021 of the penal code; (4) he pleaded not guilty; (5) there was no plea bargain; (6) appellant's conviction subjects him to the sex offender registration requirements in chapter 62 of the Texas Code of Criminal Procedure; and (7) the age of the victim at the time of the offense was thirteen. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref d).

As modified, we firm the trial court's judgment.


/ Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
121632F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

LORVIN RODRIGUEZ ZAMBRANO, Appellant

No. 05-12-01632-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F11-58067-W.
Opinion delivered by Justice Myers.
Justices O'Neill and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

"JUDGMENT OF CONVICTION BY COURT—WAIVER OF JURY TRIAL" should be changed to "JUDGMENT OF CONVICTION BY JURY"

Offense for Which Defendant Convicted: "SEX ABUSE CONTINUOUS CHILD/14" should be changed to "AGGRAVATED SEXUAL ASSAULT OF A CHILD/14"

Statute for Offense: "21.02 Penal Code" should be changed to "22.021 Penal Code"

Plea to Offense: "GUILTY" should be changed to "NOT GUILTY"

Terms of Plea Bargain: "75 YEARS TDC/NO FINE" should be changed to "N/A"

"Sex Offender Registration Requirements do not apply to the Defendant. TEX. CODE CRIM. PROC. Chapter 62" should be changed to "Sex Offender Registration Requirements apply to the Defendant. TEX. CODE CRIM. PROC. Chapter 62"

"The age of the victim at the time of the offense was N/A" should be changed to "The age of the victim at the time of the offense was 13"

As **MODIFIED**, the judgment is **AFFIRMED**. We direct the trial court to prepare a new judgment that reflects these modifications.

Judgment entered this 12th day of February, 2014.

/Lana Myers/

LANA MYERS
JUSTICE